## John James and another v. The Pontiac and Groveland Plank Road Company.

The authority to sell the franchises of a plank road corporation on execution, is derived entirely from the statute, and the sale can be made in no other mode than that pointed out by the statute.

That mode is a sale of the franchise to such person as will satisfy the execution, with the legal fees, and take the franchise for the shortest period of time.

A sale of the franchise for a certain period, in part payment of the execution, is entirely unauthorized and void.

The acquiescence of the stockholders in the purchaser taking possession under such an invalid sale of the franchise of a plank road corporation, their payment to him of tolls for passing over the road, and the expenditure by him of moneys in repairing the road, with their knowledge, will not confirm and render valid such a sale.

*Heard April 4th.   Decided April 20th.*

Questions reserved from Oakland Circuit.

In October, 1857, the plaintiffs recovered against the defendants, in the Circuit Court for the county of Oakland, a judgment for. $641 57, upon which execution was issued January 14th 1858. On this execution, the sheriff proceeded to sell the corporate franchises of defendants, and they were struck off, as the sheriff returns, to John G. Owen, " for the period of fifty years, and for the sum of sixty dollars; that being the largest sum of money and the shortest period of time bid by any person."

June 18, 1859, defendants moved to set aside this sale, and in opposition to such motion, it was shown by the affidavit of Owen, that many of the stockholders of the company were present at such sale, and knew the manner in which the same was made, and interposed no objection thereto; that since that time, and before the present motion, he had expended $700 in repairs on said road, over and above all tolls received thereon; that most, if not all of the stockholders of said company, have passed over the road, and voluntarily paid tolls. thereon to him, since he took possession under his purchase, and knew that he was making valuable improvements upon the road

under his purchase, and made no objection thereto, and set up no claim against the deponent's rights under such purchase.

On this motion, the Circuit Court reserved two questions for the opinion of this court.

1. Was said sale valid?

2. If not, do the facts set forth in the affidavit of Owen cure the invalidity?

*G. V. N. Lothrop,* for the motion:

Franchises of a corporation were not subject to seizure and sale on execution, at common law, and the statute which gives the right must be strictly pursued:— 6 *Wheat.* 119; 2 *Doug. Mich.* 506. The rule is fully applied to special sales under execution:— 2 *Mass.* 154; 9 *Mass.* 242; 13 *Mass.* 488; 7 *Me.* 337; 42 *Me.* 414.

The doctrine of waiver can not apply where the act relates to title of property, and is an entire nullity — not voidable, merely, but void. In such cases, to make good the title, the act done must be such an one as by itself would make a good title.

The act of individual stockholders, or the individual acts of all the stockholders, could not amount to a *corporate* act. To bind the corporation, corporate acts are required; and on this ground alone the notion of waiver would fail.

But it is denied that the corporation could confirm a nullity like this. It has no such power. It can not voluntarily alienate its franchise. It is only by an adverse statutory proceeding that this can be done. The corporation can neither hinder nor help it. If not done regularly under the statute, it is not done at all.

*M. Wisner,* for the purchaser.

MARTIN, CH. J.:

By a general statute of this state relative to corpora-

tions (*Comp. Laws, Ch.* 73), provision is made for the sale upon execution of the franchises of a class of corporations within which this defendant is embraced. These provisions are substantially as follows: When any judgment shall be recovered against any turnpike or other corporation authorized to receive toll, the franchise of such corporation, with all the rights and privileges thereof, together with all their corporate property, both real and personal, may be taken on execution and sold at public auction. This sale of the franchise, however, is not to the highest bidder, as in ordinary sales upon execution, but to the person who shall satisfy the execution, with all legal fees and expenses thereon, and shall agree to take such franchise for the shortest period of time, and to receive during that time all such toll as the corporation would, by law, be entitled to demand. The officer's return upon the execution transfers to such purchaser all the privileges and immunities of the corporation, so far as relates to the right of demanding toll, and he is required to deliver immediately after such sale, to the purchaser, possession of all the toll houses and gates of the corporation, in whatever county situated; and the purchaser may thereafter demand and receive all the tolls which may accrue during the time limited by the terms of his purchase, as the corporation might had not such sale been made; and he may recover any penalties imposed by law for the injury of the franchise, or from any other cause, which the corporation would have been entitled to recover during such time; the corporation being debarred for such time of that right. In other respects the statute retains to the corporation the same powers, and imposes upon it the discharge of the same duties, and the same liabilities to penalties and forfeitures, as existed before such sale; and it allows the corporation, within three months after such sale, to redeem the franchise, by paying the amount paid therefor, with ten per cent. interest, but without any allowance for the tolls received by the purchaser.

Now, at the common law, the franchises of a corporation were not subject to seizure and sale upon execution, but could only be reached by proceedings in equity. Such being the case, the sheriff derived his authority to seize and sell solely from this special statute; and he can not proceed under the general law concerning executions. This statute defines who shall be deemed to be the highest bidder, and its obvious intent is that the purchase under the execution shall only be by one who shall pay the amount demanded by the execution, with the legal fees, and shall offer to take such franchise for the shortest period of time. The franchise then is not sold absolutely, as property is under the ordinary executions issued upon judgments, but for a limited period of time; and is acquired by the purchaser for the purposes of reimbursement and indemnity for his payment of the debt; and competition in bidding is confined to this question of time.

The corporation is not deprived of its absolute title to the franchise, nor does the purchaser acquire any, except the right to receive the tolls for a limited period; and he does not assume, nor have imposed upon him, any of the duties and obligations of the corporation.

If a sale can not be made by a sheriff upon these terms, it is his duty to return the execution unsatisfied for want of bidders; upon which the creditor has his remedy against the corporation, or against the stockholders, by proceedings authorized by other provisions of the statute.

In striking off the franchise to Owen, for $60, as the highest bidder, when the amount of the execution exceeded $600, the sheriff exceeded his authority, and the sale was void. Nor do the facts set forth in the affidavits "cure the invalidity." Indeed, it is impossible to conceive of any acts or facts which will render valid that which is wholly void. The parties may, by contract, secure to the purchaser the same rights which he would have acquired under the sale if valid; but such contract would not render the

sale valid. And this is the distinction between void and voidable acts. Acquiescence may give validity to the latter, but never can to the former.

The individual stockholders were under no obligation to direct the sheriff in the discharge of his duties, nor to protest against that which they knew to be a nullity, or of the character of which they were ignorant.

There is nothing like acquiescence by the corporation indicated by such silence of its members, or by their use of the road and the payment of tolls afterwards. Their convenience or necessities may have required the latter, and it would be a monstrous doctrine to hold, that such necessities of the individual should compromise or extinguish the rights of the corporation. As individuals, they did not represent the aggregate body, nor act as its agents or representatives; and they could not, by their acts or omissions, bind it.

Nor will the fact that Owen has, since the pretended purchase, expended large sums in repairs upon the road, if true, cure such invalidity, both for the reasons above given, and because, if he acted in the best faith, yet he made them voluntarily, without any legal obligation to do so, and upon property not his, but which he held under a void sale.

The questions must be answered in the negative.

The other Justices concurred.