THE CITY OF PALESTINE v. N. M. BARNES ET AL.

1. POWER OF CITY UNDER GENERAL CHARTER LAW.—It is not beyond the authority of a city acting under the general charter law, to contract for the erection of a market-house with a person or corporation, conceding, in consideration of such building and the use of a part of same, exclusive market privileges in such city, with rights to lease stalls, collect rents, and an exemption from city taxes for a term of twenty-one years.

2. CONTRACT WITH CITY—ORDINANCES.—That an ordinance for the protection of the exclusive market privileges so granted may not be rigidly enforced, is not a violation of such contract authorizing its rescission.

3. EXECUTION SALE ONLY CONVEYS THE INTEREST OF DEFENDANT IN EXECUTION.—A purchase under execution sale of such market-house property, under a judgment rendered against the corporation owning it, would only take such right as was bound by the judgment, and would not extend to the rights of the city to the use of a room contracted for in the original contract for its erection, of which the city had possession.

4. FRANCHISE NOT PASSED BY SALE OF PROPERTY OF THE CORPORATION.—A sale under execution of the market-house property of a city, will not carry with it the franchises held by the corporation owning it.

5. FRANCHISES.—If the corporate franchises of a corporation can only be exercised on a particular lot in a city, then such lot would be an incident to the corporation, and could not be sold under execution.

APPEAL from Anderson. Tried below before the Hon. R. S. Walker.

The city of Palestine, by its mayor and city council, contracted with the Palestine Market-house Association on September 2, 1875, whereby, under a city ordinance, it was stipulated that the association should for twenty-one years be exempt from city tax, should have the right to assess and collect market rents, and should have exclusive market privileges in the city; and in consideration, that the association should purchase a specified town lot and erect thereon a market-house on a given plan and furnish one room therein to the city, the house to be erected within twelve months, and after twenty-one years the lot and buildings thereon to belong to the city.

The lot was bought, the market-house erected by the association, and it was received by the city authorities on March 29, 1876, the city taking possession of the room stipulated for in the contract.

Subsequently suit was instituted against the association, and on July 6, 1877, judgment was rendered for $1,440.70, and a decree foreclosing the mechanic's lien in favor of

plaintiff. Under order of sale N. B. Barnes, plaintiff in the execution, T. T. Gammage, and J. M. Silliman became the purchasers at $1,000.

The bid was credited on the judgment; no money, except the costs, was paid.

The purchasers at once took possession of the lot and the market-house, except the room occupied by the city under the original contract.

March 23, 1878, Barnes, Silliman, and Gammage brought suit against the city of Palestine, it being a corporation acting under the general charter law approved March 15, 1875. By amended original petition, filed June 17, 1878, the petition shows two counts: (1) an action of trespass to try title and for damages for the house and lot; and (2), setting out the facts, plaintiffs asked that the contract between the city and the association be annulled or rescinded, and for possession, or in alternative, a foreclosure as against the city of the mechanic's lien held by plaintiff Barnes, &c.

Plaintiffs sought to set aside an instrument of writing described as a lease from the city of Palestine Market-house Association for the above-described lot of ground and building, dated September 2, 1875, and which lot of ground and building were sold by the sheriff of Anderson county September 4, 1877, under a judgment and order of sale in favor of N. B. Barnes against B. D. Wilson and the Palestine Market-house Association, rendered by the District Court of Anderson county on the 6th of July, 1877, and purchased by plaintiffs at the sheriff's sale.

The lease purports to have been made by authority of the city of Palestine under an ordinance entitled "Market ordinance," passed by the city council in August, 1875, and amended August 9, 1876. It was therein provided that there should be erected by the city authorities or their lessees upon said lot of ground a market-house for said city, and authorized the mayor and aldermen to make said lease.

The mayor and aldermen, in behalf of the city of Palestine

in its municipal and corporate capacity, made a lease of the premises to the Palestine Market-house Association dated September 2, 1875, and therein bargained, conveyed, rented, and leased said lot of ground and building to the Palestine Market-house Association in its corporate capacity, their officers, successors, trustees, and assignees, for twenty-one years from the 4th of August, 1875, exempting the lot and building from city *ad-valorem* taxes during the lease, and granting to the Palestine Market-house Association exclusive market privileges, with power to assess a tax at a specified rate upon the occupants of the meat, game, and fish stalls, &c., and upon each person or wagon selling fruits, vegetables, &c., in said market-house, or on said lot, except in a rented stall, a special tax at a specified sum during the lease. The market-house association, in consideration of the lease and exclusive market privileges, agreed to purchase the lot of ground from Mrs. S. A. E. Fowler and pay for it, and erect thereon a brick market-house and city hall of specified dimensions, and keep the building in repair during the lease; reserving to the city the control of part of the rooms in the building for the use of the mayor and other city officers and for a post-office, and for other purposes, free of rent to the market-house association during the lease, and at the end of the term the lot and building to be owned by the city in fee-simple. The market-house association, as recited in the contract, conveyed the property to the city in fee-simple, the conveyance to be in force and take effect from and after the 4th of August, 1896, the building to be accepted by the city when completed.

The market-house association purchased and paid for the lot of ground from Mrs. S. A. E. Fowler, and took her deed of conveyance for it to themselves, dated September 28, 1875. The market building was erected on the lot according to the terms of the lease, subject, as alleged in the pleadings, to N. B. Barnes' mechanic's lien for work done and material furnished and used in the building.

Plaintiffs, as owners of the lot of ground and building,

sought to set aside the lease and contract with the city of Palestine on the grounds that the mayor and aldermen violated the city charter and exceeded their powers under the market ordinance, in the surrender of the market franchise and in exempting the property from city *ad-valorem* taxes, as provided in the contract with the market-house association; that the defendant had taken possession of the reserved rooms, and was legally incapable and failed to protect plaintiffs in the enjoyment of the market privileges granted to the said association, and failed to enforce the market ordinances, &c., and that thereby plaintiffs were prevented from leasing the market stalls and receiving the benefits of the market-house property owned by them.

May 24, 1878, defendant answered. June 17, 1878, defendant filed an amended original answer, and excepted generally to the "amended original petition" filed June 17, 1878, and specially excepted, because of insufficiency—

1st. In so far as it sought to foreclose said mechanic's lien for said balance of $440.70, because of misjoinder of plaintiffs, Silliman and Gammage having no interest in it.

2d. In so far as it attempted to charge a lien in favor of said Barnes, because said lien is not shown to have been fixed as against said city.

3d. In so far as it set up the failure of the city to comply with its contract, because plaintiffs were not the owners of the franchise of said association or in a condition to rescind the contract.

4th. In so far as it sought to annul said agreement, because it was not shown that all the consideration passing from said city was unlawful, and because plaintiffs were not the owners of said franchise, and because it could not complain of its own wrong as a basis for annulling its contract, if plaintiffs were said market-house association.

5th. It was not shown that the lien of Barnes was ever fixed by law against the city.

Answering, defendant pleaded not guilty, general denial,

and asked, in the event that the property should be held subject to the lien, that defendant be allowed to redeem, &c.

On the 27th of June, 1878, the court rendered its judgment (there being no jury)—that the plaintiffs recover of defendant said lot 7 in block 16 in Palestine, Texas, with all the buildings thereon, a writ of possession, and all costs.

On the 27th of June, 1878, defendant filed a motion for a new trial, on the grounds—

1st. That the court erred in overruling its general and special exceptions.

2d. That the court erred in permitting plaintiffs to read in evidence the judgment of N. B. Barnes against B. D. Wilson and said association, and the order of sale and deed thereunder, over the objection of defendant that it was not a party to the suit.

3d. That the court erred in construing the contract of September 2, 1875, as being executory in whole at the date of the judgment and suit; that it was not a necessary party; that a sale under the judgment destroyed all of its rights and interests, and that it had no right to redeem.

On the 27th of June, 1878, the court overruled defendant's motion for a new trial, and defendant gave notice of an appeal to the Supreme Court.

On the 12th of July, 1878, defendant filed its assignment of errors, viz.:

1st. That the court erred in overruling the defendant's special and general exceptions to plaintiffs' amended original petition.

3d. That the court erred in construing the contract between the city of Palestine and the market-house association bearing date September 2, 1875, as being an executory contract at the date of the judgment of said N. B. Barnes against B. D. Wilson and the Palestine Market-house Association; in holding that at the date of said judgment the city of Palestine was not a necessary party to the judgment; in holding that at the date of the sale of the market-house by the sher-

iff the city of Palestine had no interest in the market-house; in holding that the sale under the judgment transferred to plaintiffs the title to said property, and that it transferred the right of defendant to continue the occupancy of the market-house under the contract; in holding that the city of Palestine had and held a mere contingent interest in the market-house liable to be destroyed, and that the same was destroyed by the sale under the judgment rendered in favor of N. B. Barnes against said Wilson and the market-house association, notwithstanding the city was not a party to said judgment; and in holding that the city of Palestine had no right to redeem the property.

4th. That the court erred in overruling defendant's motion for a new trial.

*Greenwood & Gooch* and *J. J. Word,* for appellant.

I. The court erred in overruling the defendant's special and general exceptions to plaintiffs' amended original petition.

1. Three persons, one having an interest in a debt and two having no interest, cannot join as plaintiffs in a suit to recover the debt or foreclose a lien securing it. To sustain this we think it unnecessary to cite authority.

2. To fix a mechanic's lien against the owner of the realty in favor of a sub-contractor, a copy of the contract or bill of particulars must be served on the land-owner as well as on the debtor, and the pleading must show that it is fixed. (Waldroff *v.* Scott, 46 Tex., 4.)

3. The sale of a house and lot under an order of sale issued under a judgment foreclosing a furnisher's lien conveys that to which the lien attached, and not the franchise of the association doing business therein; and a part of a contract cannot be rescinded.

4. Where a plaintiff specially sets out his title, he cannot introduce any other; and if that stated will not authorize a recovery, it is subject to exception; and a judgment which is

a link in the title rendered in favor of Barnes against Wilson and the market-house association will not affect the city of Palestine, which has an estate in fee-simple to take effect *in futuro,* or which is a tenant for years in possession, and which is not a party to the suit.   (Rivers *v.* Foote, 11 Tex., 670; Custard *v.* Musgrove, 47 Tex., 218; Waldroff *v.* Scott, 46 Tex., 1; Peters *v.* Clements, 46 Tex., 115; Wright *v.* Wooters, 46 Tex., 380; Lockhart *v.* Ward, 45 Tex., 227.)

II. A plaintiff, in a suit of trespass to try title, must recover on the strength of his own title; but it is sufficient to show that both parties claim from a common source.   (2 Paschal's Dig., art. 6829*a*.)

1. If, in showing a common source, it is also shown that the defendant has a vested remainder, or an estate for a term of years, by recorded conveyance from the common source prior in date to the conveyance of the plaintiff, and that the conveyance to the plaintiff is from a sheriff, under an order of sale and judgment against the corporation which is the common source, and to which suit and judgment the defendant was not a party, though his conveyance was existing and recorded at the beginning of the suit, the plaintiff cannot recover on that title in that suit of trespass to try title. (Waldroff *v.* Scott, 46 Tex., 1; Peters *v.* Clement, 46 Tex., 115; Wright *v.* Wooters, 46 Tex., 380; Lockhart *v.* Ward, 45 Tex., 227; Bish. on Cont., sec. 617.)

2. An estate of freehold or inheritance may be made to commence *in futuro,* by deed in like manner as by will. (Paschal's Dig., art. 1002; Chase's Blackst., side p. 168, top p. 349; 2 Wash. on Real Estate, 456, 592.)

3. The alienation of any particular estate on which any remainder may depend shall not operate to defeat, impair, or in anywise affect such remainder.   (1 Paschal's Dig., art. 998; 2 Wash. on Real Estate, 594, 595; Chase's Blackst., 352, 353.)

4. The city of Palestine had power to make the contract attacked.

III. The court erred in overruling defendant's motion for a new trial.

The same points presented have been discussed in the foregoing propositions, except the last cause of complaint in the third reason in the motion, viz.: "The court erred in holding \* \* \* that the city of Palestine had no right to redeem said property."

1. Every person who has an interest in land, whether as tenant for years or a greater estate, has a right to redeem. (Lockhart *v.* Ward, 45 Tex., 227, and authorities cited.)

*R. A. Reeves & Son,* for appellees.

I. If the plaintiffs are not entitled to relief under the prayer to which the exception relates, the relief to which they are entitled will be afforded under the other prayers of the petition or the prayer for general relief.

In the first count in the petition the plaintiffs pray for the restitution of the premises, with damages and costs. In the second count plaintiffs pray that the lease be held as null and void, and judgment for the restitution of the lot of ground and premises, and for the value of their use and occupation; or if that cannot be done, then they pray judgment enforcing the mechanic's lien against said lot and building, or that they be allowed to remove the building in satisfaction of said lien, and for costs, and for general and special relief. (Trammell *v.* Watson, 25 Tex. Supp., 216; Story's Eq. Pl., sec. 40.)

II. The employment of a contractor or other person to erect a house is deemed the creation of an agency to the extent of rendering the ground and house liable to a lien for the payment of the labor and material furnished and used by his employé, or sub-contractor, in the erection of the house.

The market-house was erected on the lot of ground in controversy according to the terms of the lease, subject to N. B. Barnes' mechanic's lien for work done and material furnished and used in the building. N. B. Barnes recovered a judg-

ment against B. D. Wilson in the District Court of Anderson county on the 6th of July, 1877, for $1,440.70, with twelve per cent. interest, besides costs, and foreclosing said Barnes' lien on the house and lot in controversy, and ordering the same to be sold to pay said sums of money. (Act of 1871, 2 Paschal's Dig., arts. 7112, 7114; Hilton *v.* Merrill, 106 Mass., 528; Parker *v.* Bell, 7 Gray, 429; Weeks *v.* Walcott, 15 Gray, 54; Clark *v.* Kingsley, 8 Allen, 543.)

III. The franchise was annexed to the estate, and plaintiffs, as purchasers of the house and lot, became thereby the assignees of the market-house association, and were entitled to all their rights and remedies to enforce or cancel their contract with the city of Palestine embracing the franchise.

The order for the sale of the house and lot in controversy was issued on the judgment of N. B. Barnes against B. D. Wilson and the Palestine Market-house Association, as mentioned under second proposition and statement, on the 1st of August, 1877, directed to the sheriff of Anderson county; and said house and lot were sold by the sheriff, by virtue of said order of sale, on the 4th of September, 1877, when appellees became the purchasers at the sum of $1,000, and the bid was entered as a credit on the judgment, by direction of N. B. Barnes, except the cost, which was paid in money, leaving a balance of $440.70, besides interest due, on the judgment; and thereupon the sheriff conveyed the house and lot of ground in controversy to plaintiffs, by deed dated September 4, 1877. (Taylor's Landlord and Tenant, secs. 260, 261, 425, 426, 429, 435, 437, 438, 444, 445, 449; Wash. on Ease. and Serv., p. 36, part 15; Norman *v.* Wells, 17 Wend., 136.)

IV. The facts stated in the petition relating as well to the recovery of the judgment by N. B. Barnes against B. D. Wilson and the market-house association as to other grounds affecting the city of Palestine, and the title it claims, amount to a cause of action against said city, and entitle the plaintiffs to recover according to their allegations.

Appellees, as plaintiffs below, deraign their title to the

house and lot in controversy, consisting of a deed from S. A. E. Fowler to the Palestine Market-house Association, dated September 28, 1875 ; a deed from Ed. Davis, sheriff of Anderson county, by his deputy, Lon. Ratcliff, to plaintiffs as purchasers, dated September 4, 1877, under Barnes' judgment and sale, as mentioned under third proposition ; also market ordinance of August, 1875, and lease from the city of Palestine to the market-house association.

V. The appellees show title in themselves to the premises, and that appellant has abandoned the market project and is legally incapable of performing, and has failed to perform, the conditions of the lease to the market-house association.

VI. The covenants of the contract between the city of Palestine and the market-house association to which the remainder was subject were dependent, and the consideration moving from the city was future and executory, illegal and void. (Short *v.* Price, 17 Tex., 403 ; 2 Story's Eq., secs. 698, 699, 700, 1303 ; 1 Pars. on Cont., pp. 280, 386, 391 ; 2 Pars. on Cont., 40 ; Taylor's Landlord and Tenant, secs. 285, 276, 565, 267 ; 1 Dill. on Mun. Corp., sec. 381, p. 471 ; 2 Dill. on Mun. Corp., sec. 749 ; Marsh *v.* Fulton County, 10 Wall., 676.)

VII. The surrender of the market franchise and the exemption of the house and lot from the payment of city *ad valorem* taxes, without an ordinance from the city council authorizing the exemption from taxation, as provided in the lease from the city of Palestine to the market-house association as the consideration moving from the city to the market-house association for the purchase of the lot of ground and the erection of the building, were not authorized by the city charter, nor by the ordinance authorizing the mayor and aldermen to make the lease. (Williams *v.* Davidson, 43 Tex., 1, 33, 37 ; 1 Dill. on Mun. Corp., secs. 55, 60, 61 ; 1 Pars. on Cont., 389, 390 ; 2 Id., 40 ; Meuser *v.* Risdon, 36 Cal., 239 ; City of Oakland *v.* Carpentier, 13 Cal., 540 ; Gale *v.* Village of Kalamazoo, 23 Mich., 344.)

VIII. Appellant cannot redeem for the Palestine Market-House Association; or if appellant can redeem to the extent of the city's claim under the contract with the market-house association, it could only be done on the supposition that the city had legal capacity to make the contract and could comply with its conditions.

By the terms of the contract with the market-house association, appellant reserved the control of part of the rooms in the building during the lease, and was to own the lot of ground and building at the end of the term in fee-simple, on conditions mentioned in the contract.

MOORE, CHIEF JUSTICE.—The "market ordinance" passed by the city council August, 1875; the agreement between appellant and the Palestine Market-house Association dated September 2, 1878; and the deed from Mrs. S. A. E. Fowler to the market-house association, for the lot of ground sued for, dated September 28, 1875, show upon their face that they are the several parts of a contract between the city of Palestine and the Palestine Market-house Association, and they must be so treated and considered, in order to enable us to properly understand them and determine the real import and object of the contract. The terms of the contract must unquestionably have been discussed and understood when the ordinance was adopted by the city, for unmistakable reference is made in it to the contemplated contract with the market-house association and the purchase of the lot. The ordinance was evidently adopted to confer upon the mayor and aldermen authority to contract with the market-house association, and also for the purpose of giving effect to the terms and stipulations of the contract which they were expected to make. The instrument by which the city, by the mayor and aldermen, and the market-house association, by its president and secretary, sought to embody the terms of the contract, as we have said had been understood and agreed upon, bears date September 2, 1875, and stipulates for the

building of a market-house by said market-house association, on the lot which, as stated in said agreement, was bought by said association "from S. A. E. Fowler, by deed dated 28th day of September, A. D. 1875."

Now, although this instrument dated September 2, 1875, is certainly a most singular and inartificially drawn instrument, when construed in connection with the ordinance by which it was evidently authorized, it cannot be denied that the market-house association thereby undertook and bound itself to erect a house upon the lot referred to, to be used as a market-house; that the city should have the right to use and occupy one room in it for the time indicated in said agreement; that the association should have the use and enjoyment of the lot and balance of the building for the purposes of the association, together with the rights, privileges, and immunities in said agreement stipulated; and that on the termination of this agreement the city of Palestine should have a title in fee for the entire lot. Whether it was supposed by the contracting parties that the title in fee to the lot was vested in the city by the instrument at the date of its execution, by estoppel or otherwise, or whether it was the intention that the fee should remain in the market-house association until the expiration of the term of twenty-one years during which they were entitled to the privileges stipulated in said instrument, it would be difficult to say; but it is, perhaps, of no great moment that we should do so at present.

Whether the market-house association held in effect under a lease from the city, or the city was a tenant for a term of years under contract with the market-house association, with or without remainder in fee, will make no difference in the result of this case as now presented, whatever questions may arise respecting the property at a future day. Although the suit is for the entire lot, yet it appears that appellees are in possession of the lot and building, with the exception of the room of which it is stipulated in the agreement the city should have the exclusive use and enjoyment

for the term of twenty-one years; and unless appellees show that they are entitled to it against appellant, the judgment must be reversed and they must ultimately fail in their action.

Conceding, then, that the title in fee remained in the market-house association, still it cannot be denied that appellant is in possession under a contract with the market-house association, who on this theory of the case was at the date of this contract, and when possession was delivered to appellant, the owner in fee of the property. Now, unless this contract was an absolute nullity, or if merely voidable unless appellees have shown that they have the right to avoid it, they unquestionably have no cause to complain.

Was, then, the agreement of September 2, 1875, which was executed long before appellees' judgment, so far as regards the room held by it, void or voidable at the instance of appellees? They insist that the entire contract is void, because the city of Palestine had no authority to delegate to the market-house association some of the privileges stipulated in said contract; that the exemptions from taxation as therein agreed had never been legally secured to the association, because no ordinance to this effect has ever been enacted, and that the ordinances which were intended to secure to the association the privileges stipulated for in said agreement had not been enforced. But we are unable to see wherein appellant exceeded the just limits of its authority in said contract. Its terms and stipulations seem to be within the limit of its authority under the charter and ordinances under which it acted. The city was authorized by ordinance to exempt the property from city taxes; and the contract showing that this had been stipulated was ratified and approved by the city, and was unquestionably just as binding upon it, as if it had adopted an ordinance to this effect.

There was no failure of the city in enforcing its ordinances. It did not stipulate that it would see that violators of the ordinances should be convicted. The ordinances were not repealed, and the city officers prosecuted whenever

charges of violation of them were properly made. But if these objections of appellees were borne out by the record, they furnish no ground for cancelling or annulling the contract. Certainly none of them show that it was absolutely void;—they, at most, merely attack the consideration in part moving the market-house association to make the contract. It is not insisted, as we understand appellees' counsel, that all the stipulations on the part of the city are *ultra vires.* But if they are, still, as the contract was, notwithstanding its want of consideration, executed to the extent at least of putting appellant in possession of the room claimed by it, the title of appellant cannot be said to be void; and if it is conceded to be voidable, appellees have not shown any right in themselves to avoid it.

Appellees, of course, acquired no greater estate than that bound by the judgment under which they purchased. The right to the tenement held by appellant was not in the market-house association at the date of the judgment, but had long before been vested in appellant. The date of the lien foreclosed by the judgment is not shown. It is argued by appellees as if this lien grew out of the building of the house in part occupied by appellant; but if so, this is not shown, nor does it appear that the lien was fixed against appellant. The effect of the sale, on the facts as presented by the record, could only vest in the purchaser such title as the market-house association had at the date of the judgment. It follows, giving to the agreement of September 2, 1875, the construction which we have heretofore conceded, that appellees, by their purchase, got title to the entire lot, subject to the easement previously vested in appellant, if said lot was at the time the subject of sale under execution.

Appellees insist that they acquired by their purchase under the judgment all the corporate rights, privileges, and franchises of said market-house association, because the same were attached or appurtenant to said lot, and as assignees of said association they were entitled to all its equitable rights

and remedies against appellant under said contract. There is, however, in our opinion, no foundation for such an assumption. It is a novel doctrine, for which no authority has been cited, that corporate franchises are ever attached to, or pass as incidents to land. If the franchises of a corporation could not be exercised or enjoyed except in a particular locality, the inability of the corporation to use or exercise them in the required locality might suspend or work an absolute destruction of its corporate existence; but, unquestionably, the forced or involuntary sale of its place of business under execution, if this can be done, vests in the purchaser at such sale neither its corporate existence nor franchises. On the contrary, instead of the corporate franchises being an appurtenance of the lot, as appellees insist, if they can only be exercised on the lot, then the lot is an incident of the corporation, and can no more be sold under execution than could the corporation itself. (The Susquehanna, &c., v. Bonham, 9 W. & S., 28; Gue v. Tide Water, &c., 24 How., 263; Plymouth, &c., v. Colwell, 39 Penn. St., 337; Youngman v. The Elmira, &c., 65 Penn. St., 278; James v. The Pontiac, 8 Mich., 91.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.