CECILIA VAN NORMAN v. THE CIRCUIT JUDGE FOR JACKSON COUNTY.

*Attachment of corporate stock—Mandamus vacating injunction.*

Mandamus lies to vacate an injunction where the bill upon which it was granted was devoid of substance, and could not therefore support the application for the writ.

Whether a bill in equity can lie to protect and enforce the lien of an attachment—Q.

Attachment is a special and extraordinary remedy, and the statutory provisions for it must be strictly construed, and cannot have force in cases not plainly within their terms.

Shares of corporation stock are intangible entities, and at common law are incapable of caption by levy; they cannot be subjected to legal process without specific legislation prescribing in substance all necessary procedure.

The actual state of the law is not changed by any misapprehension of the Legislature concerning the real fact; and legislation enacted on the assumption that a certain remedy exists cannot establish such remedy.

Executions and attachments cannot be levied on shares of corporation stock if the debtor is not himself the legal possessor of the interest, or where he has only an equitable right or has regularly assigned his interest.

An attachment cannot be levied on corporate stock previously assigned by the defendant to his wife; and as a bill cannot lie to protect the lien of such an attachment by enjoining the payment of dividends to the holder, such an injunction, if granted, can be vacated by mandamus.

Mandamus to require respondent to vacate an injunction whereby the relator was restrained from proceeding with an action. Submitted November 9, 1880. Decided January 12, 1881.

*Don. M. Dickinson* and *Alfred Russell* for relator.

*Edwin F. Conely* for respondent.

GRAVES, J. This is a hearing on an order to show cause why a mandamus should not issue to require an order for an injunction to be vacated.

For an understanding of the case a reference is necessary to the main circumstances. In 1873 the relator's husband, Arthur Van Norman, was a stockholder in the private corporation in Jackson known as the Central Car & Manufacturing Company, and held 917½ shares of the capital stock, of the face value of $22,937.50. Sometime about the month of August, 1877, said Arthur Van Norman and one Hiram Gay began negotiations with Luther Beecher for the occupation on special terms of his establishment known as the " Biddle House," and they at length ripened into a contract which was reduced to writing and executed by the parties February 14, 1878; and on or about March 27, 1878, they received

possession of the real estate and also of certain personal property which the arrangement likewise covered.

Up to February 19, 1878, or until four days after the execution of said agreement and a little more than a month prior to possession under it, the said Arthur Van Norman continued his ownership of said stock. But at that date he returned the certificate thereof to the company's secretary, and with assignments indorsed which purported to convey the stock to relator, and the company immediately issued new certificates to her in place of the old ones. There appears to be no question of the sufficiency, in form at least, of this transfer.

January 31, 1879, Beecher obtained possession of the "Biddle House" property. But about two weeks earlier and on the 18th of January he began a suit by attachment in the circuit court for the county of Jackson against the said Arthur Van Norman and Hiram Gay for an indebtedness he alleged had accrued to him against them under the contract, the ground for the writ, as set up, being that the transfer of said stock to relator was made with intent to defraud his creditors. The sheriff executed the writ by levying on this stock as though it belonged to the defendant Arthur Van Norman. Subsequently and on the 7th of March, 1879, the company declared a dividend of twenty per cent. and directed payment on all shares except those in question, and ordering that payment on those should be withheld until a determination should be reached of the dispute about their ownership.

In July, 1880, the relator sued the company at law for the dividend, and in August following Mr. Beecher filed his bill on the equity side of the court having cognizance of the law cases.

The bill seems to be one of first impression and the pleader would probably concede that some matters pertinent to its theory are omitted and that others not needful to it are inserted. But that is perhaps not important now. It contemplates that by the levy of the attachment Mr. Beecher obtained a positive lien on the stock and on the accruing dividend, and it proceeds upon the idea that the aid of equity as here involved is requisite to protect and enforce this lien.

It will not escape notice that if the case requires as an equitable basis that a lien was created by the levy, the necessity would hardly be met by taking the existence of the lien for granted. It might well be argued that whether there be a lien or not is a vital question, and to assume its existence as a ground of equity is to assume the essential point in controversy. If the attachment were considered as well laid the lien would be merely provisional. It might cease before the determination of the action. But if not, it might then turn out that there had never been any just foundation for it, and the authority of equity to intermeddle for the supervision of such a lien is not so clear as to be assumed. There are many cases where the service of *mesne* process will bind personally for the time being without creating a lien properly subject to equitable protection and enforcement. According to the theory of the bill the dividend was bound equally with the stock, and one is supposed to be in the same plight as the other, and if the case called for it, it might be useful to inquire into the necessity for the bill on its own principle. If a lien was established by the levy, or if the levy bound the stock and dividend as is claimed, the occasion for the suit in equity on its own facts is not self-evident. These observations on the character of the bill are merely incidental and are mine only.

An injunction was sought against the relator and the company, and in relation to her the prayer was that she "be enjoined and restrained from prosecuting her said action in relation to said dividend and from commencing or prosecuting any and all other suits or actions in relation to said stock or dividend, or any other dividend thereon, against the said company or any other party or parties pending the determination of this your orator's suit, or until this court shall make further order herein, and that she be perpetually, or until the determination of said attachment suit, enjoined and restrained from so doing by the final decree of this court herein, and that she be restrained from transferring or assigning said stock until further order of this court." In regard to the company the prayer was that it "be enjoined and restrained

from paying over to said Cecilia E. Van Norman, or to any one for her, said dividend or any other moneys due or which may become due upon said stock until this court shall make further order herein."

On or about August 7, 1879, a preliminary injunction was allowed according to this prayer, and April 27, 1880, the relator moved its dissolution. May 11, 1880, the motion was denied and soon thereafter the present application was made to this court.

Were the question to be examined under an assumption that the attachment was well laid, it would not follow as of course that the case made by the bill might be deemed sufficient to serve as a basis for the exercise of discretion on the application for an injunction, but no investigation of the controversy in that aspect is deemed necessary. *Fox v. Willis* 1 Mich. 321; *Williams v. Hubbard* Walk. Ch. 28; *Beck v. Burdett* 1 Paige 305.

If the levy was not of force to bind the stock at all, the bill as one for an injunction against intermeddling with it, is devoid of substance, and there was no foundation to support an order for the writ, and it should be vacated. Was the levy good? The attention is first drawn to the special character of the various proceedings. The remedy by attachment is highly artificial and in this State is considered as "*special and extraordinary.*" The statutory provisions relating to it have invariably been subjected to strict construction, and the rule is fairly established that unless the case is plainly within the terms expressed it cannot be considered as embraced. The leading cases are *Greenvault v. Farmers' & Mechanics' Bank* 2 Doug. (Mich.) 498, and *Buckley v. Lowry* 2 Mich. 419.

The same doctrine applies with great force to the subjection of shares of stock in incorporated companies to *mesne* process. They are not leviable at common law, and positive provisions are requisite to enable a court of common law to apply its power to them. They are intangible entities and incapable of caption by the gross methods of that system. In order that they may be safely proceeded against without

going into a court of equity it is indispensable that the legislature provide specifically therefor and prescribe in detail, or at least in substance, all the means necessary for the object. *Blair v. Compton* 33 Mich. 414; *Denton v. Livingston* 9 Johns. 96; *Howe v. Starkweather* 17 Mass. 240; *Williamson v. Smoot* 7 Mart. O. S. (La.) 31; *James v. Pontiac & Groveland Plank-road Co.* 8 Mich. 91.

It was in contemplation of the inadequacy of the methods of the common law that equity came forward to afford redress to the creditor against such property, and our legislature proceeded on the same principle when it passed Comp. L. § 5060. It was considered that equity ought to have jurisdiction to afford relief when it was well shown that the law had exhausted its power; and it was also considered that such condition would be so shown, and only so shown in respect to such property, by the due return unsatisfied of a legal execution. The Revised Statutes of 1846 made provision for subjecting to execution any share or interest of a stockholder in any bank, insurance company, or any other joint-stock company incorporated under the authority of, or authorized to be created by any law of this State, "in the following manner." Comp. L. § 6112. "The officer shall leave a copy of the execution, certified by him, with the clerk, treasurer, or cashier of the company, if there be any such officer, and if not, then with any officer or person who has, at the time, the custody of the books and papers of the corporation; and the *property shall be considered seized on execution* when such copy is left." § 6113. "The officer of the company who is appointed to keep a record or account of the shares or interest of the stockholders therein, shall, upon exhibiting to him the execution, be bound to give a certificate of the number of shares or amount of the interest *held* by such *judgment debtor*." § 6114. "A copy of the execution and the return thereon, certified by the officer executing the same, *shall*, within fourteen days after the sale, be left with the officer of the company whose duty it may be to keep a record of the transfer of shares; and the purchaser shall thereupon be entitled to a certificate or certificates of the

shares bought by him, upon paying the fees therefor, and for recording the transfer." § 6115. Having enacted these regulations the legislature seem to have assumed that the suit might happen to be commenced by seizure of the defendant's share or interest on attachment; and proceeding under that impression it was declared in the next section that if the shares or interest "shall have been attached in the suit in which the execution issued, the purchaser shall be entitled to all the dividends which shall have accrued after the levying of the attachment." § 6116. It is unquestionable, however, that no provision was attempted to be made for attaching such property until 1877, and that the supposition that a suit could be so commenced at the date of the previous enactment was a plain error. Of course this mistaken view by the legislature worked no change in the law. *Talbot v. Seeman* 1 Cr. 1–25.

In 1877 it was enacted that "in attaching shares of stock, or the interest of a stockholder in any corporation organized under the laws of this State, the levy shall be made in *the manner* provided by law for the seizure of such property on execution." Pub. Acts 1877, p. 3. There is no other authority for levying an attachment on shares in domestic corporations than is found in this provision. The circumstance that it does not directly and affirmatively enact that such property shall be subject to attachment is not overlooked. The point is not considered important. The aim of the provision is to give a mode for attaching a debtor's shares or his interest in shares in a domestic corporation in the same cases in which an execution would be authorized, and the right to make seizure by attachment is thus confined and can be carried no further. Whether in strictness it can have equal latitude need not be discussed.

Now in giving the right to levy executions on corporation shares the law confines it to cases where the debtor's *status* is that of stockholder and legal possessor of the interest. *Newberry v. Detroit & Lake Superior Iron Co.* 17 Mich. 141. In case his right is merely equitable, or in case he has regularly passed to another the legal title so that, as against him,

the transfer is good and is one the company is bound to recognize, the shares are not leviable on attachment or execution issued against his property. *Newberry v. Detroit & Lake Superior Iron Co.* supra.

In such circumstances the process of a court of common law is powerless. The property is beyond its scope. Its statutory energy is only capable of applying when the interest is found standing as the property of the debtor. The statute has made no provision for seizing under an attachment against one a share belonging *prima facie* to another, as an expedient to enable the attaching creditor to contest the title of the apparent owner, and, as before suggested, the remedy is one depending on the statute and not to be in anywise enlarged by construction. If the apparent owner holds by a title in which the creditor, in his character of creditor, can overreach, he must put himself in a situation to assail it in some other way.

In the case before us the stock was found regularly standing in the relator's name and as her property on the stock-book. The company knew she was a regular assignee. She was *prima facie* owner. *Turnbull v. Payson* 95 U. S. 418; *Nat. Bank of New London v. L. S. & M. S. R. Co.* 21 Ohio St. 221. And all admit that her title is good against every one except creditors of her husband. She is a stockholder in the company, but her husband is not. She has the legal title, and under the terms of the statute the stock was not subject to levy on the attachment issued against him.

I think the writ should issue and that the relator should be allowed her costs of the application.

The other Justices concurred.