## STATE v. A. PERRY.

(Filed 27 October, 1907.)

**1. Cities and Towns—Health Ordinances—Selling Fish—Municipal Powers.**

An ordinance prohibiting the sale of fish within the corporate limits of a town outside of a certain market house therein, excepting fresh fish caught in the streams of the county at such places as may not be prohibited, is valid, being for the preservation of the public health.

**2. Same—Market House—Contract—Constitutional Law.**

It is within the power of a city or town to provide, by contract with its citizens, a market house and exclude with certain reasonable exceptions, the sale of fish at other places, it appearing that, under the contract, the market house was to remain under the full control of the municipal authorities, and that

reasonable accommodation had been provided for the vendors, with reasonable charges for the stalls. A contract of this character does not contravene Art. I, sec. 7, of the Constitution, relating to perpetuities and monopolies.

### 3. Same—Defense—Illegal Contract.

A defendant on trial for violating a valid ordinance of a city or town in selling fish outside of the market house, cannot avail himself of the defense that the market house was provided by a citizen under a contract with the municipality which was void by reason of the property being exempt from taxes under certain conditions; for, if such defense were otherwise sufficient, the ordinance is enforcible independently and regardless of the contract.

APPEAL from *W. J. Adams, J.,* May Term, 1909, of CUMBER-LAND.

Indictment for violation of an ordinance of the city of Fayetteville. The ordinance is as follows:

"Sec. 13. No person shall sell any fresh fish within the incorporate limits of the city of Fayetteville, outside of said market house in said city: *Provided,* that fresh fish which are caught in the streams and waters in Cumberland County, when offered for sale in a fresh condition, shortly after they are caught, may be sold within the said city, at such places and points as may not be prohibited by law."

The defendant admitted that he sold fresh fish, after the passage of said ordinance and while it was in force, on the public streets within the corporate limits of Fayetteville, which fish were not taken or caught from the waters or streams of Cumberland County. There was a verdict of guilty. From the judgment of the court the defendant appealed.

The facts are stated in the opinion of the Court.

*Attorney-General, George L. Jones, R. H. Dye* and *Cook & Davis* for the State.
*Thomas H. Sutton* and *C. W. Broadfoot* for defendant.

BROWN, J. The only questions presented by this appeal which we deem it necessary to discuss are the contentions of the defendant that the ordinance is *ultra vires* and also in conflict with Article I, section 31, of our State Constitution, which forbids monopolies.

It appears to us that the passage of the ordinance in question was a valid exercise of the police power vested generally in municipal corporations.

The power of the public authorities to inspect and control the sale of articles of food intended for consumption is undoubted, the object being the preservation of the health of the community.

The power exists, therefore, in municipal authorities to establish and then regulate and control public markets or places at which all articles of food shall be offered for sale and sold, or to regulate and control markets established by private individuals and carried on as private enterprises. The health of the community, being one of the purposes of the organization of government, and the purity of food and drink having such an important effect upon the health, is universally held to be a ground for the exercise of the power. 1 Abbot on Municipal Corporations, sec. 134; Smith Mod. Law, sec. 593 *et seq.;* Dillon on Mun. Corp., sec. 386.

This power to make by-laws relative to the public markets will not authorize corporations to prohibit the sale of fish and meats, etc., entirely within its limits, because that would be in restraint of trade, but it does empower them to prohibit the hawking about or vending by retail such articles of trade except at the public markets and within certain limits about them.

"The fixing the places and times at which markets shall be held and kept open," says the Supreme Court of New York, in *Bush v. Seabury,* 8 Johns, 418, "and the prohibition to sell at other places and times, are among the most ordinary regulations of a city or town police." Also, 1 Abbot, sec. 135, and cases cited in notes.

The power of the municipal authorities to enact ordinances regulating the sale of perishable food stuff, and the supervision thereof by the city's health officer, is an exercise of its police power, which has been so uniformly sustained in all the courts of the land that it seems to be firmly established.

A collection of the cases will be found in notes to *State v. Sarradat,* 24 L. R. A., p. 584; *State v. Moore,* 104 N. C., 714; *Sorrell's case,* 46 N. C., 49; *State v. Pendergrass,* 106 N. C., 665.

But it is insisted that the ordinance was enacted in order to create a private monopoly, and conflicts with Article I, section 7, of our State Constitution, which declares that "Perpetuities and monopolies are contrary to the genius of a free State and ought not to be allowed." The facts, briefly stated, are these: The city of Fayetteville, having no public market house, and realizing the public necessity in the promotion of the health and comfort of its citizens for such a building, through its aldermen, entered into a contract with John Underwood and associates for the erection of this market house, which the city was not able or did not care to undertake to build. The city provides for supervision by its own officials, has quarters for health officers, and enforces obedience to all regulations which may be from time to time enacted by the city. The contract also provides for the

purchase of the property by the city at stated periods, at its option. In fact, the entire market place is under the absolute control of the city; and it further provides that the rental for the stalls shall be reasonable, and, in order to establish what might be reasonable rent, it provides that it shall not be greater than that in other towns of similar size and under similar circumstances in North Carolina. And for all these benefits accruing to the public and furnishing the city quarters for its health officers, and other benefits accruing to the city, the city agrees to ·pay a rental equal to the amount of taxes imposed thereon by the city until such time as the enterprise might be on a paying basis of six per cent. The books and records of the company are at all times open to the examination of the city officials.

We do not think this contract is obnoxious to any section of our Constitution or violates any principle of public policy.

The contention that it is void because the property is exempted from municipal taxation is without basis upon the facts; but if it were true, this defendant could not raise the point under an indictment for violating a city ordinance, which in itself is a valid exercise of the police powers of the city and may be enforced, independent and regardless of the contract. *Imp. Co. v. Commissioners,* 146 N. C., 355.

To sustain the judgment it therefore becomes unnecessary to consider the contract; but as it was vigorously attacked by the learned counsel for defendant, and as it is to the interest of the city to set the question at rest, we will say that the right to enter into such a contract is clearly within the legitimate powers of the board of aldermen. The city has conferred no monopoly on Underwood and his associates. It is the city's market house, to all intents and purposes, governed, controlled and regulated by its authorities. Every fish and meat dealer, as far as the capacity of the market house will permit, is at liberty to rent stalls and do business there. Underwood and associates have no exclusive right to sell fish there themselves, nor to charge others their own price for space. Extortionate rents are carefully guarded against by the terms of the contract. The city had as much right ·to contract with Underwood to furnish it a public market house as it had the right to build one of its own. The purpose of the contract is to benefit the community, and municipal legislation which has for its object the protection of the health, morals, etc., of the municipality is entitled to liberal construction, and the scope, if within constitutional limits, is very largely within the discretion of the authorities and not subject

to judicial interference. 2 Smith's Mod. Law of Mun. Corp., sec. 1322.

We think the contract is valid, and that similar conventions have been heretofore sustained. *State v. Sarradat, supra,* and notes; *Palestine v. Barnes,* 50 Tex., 538; *State v. Natal,* 41 La. An., 887, 650, 722, and cases there cited; 1 Smith Mod. Law Corp., sec. 593.

The judgment of the Superior Court is

Affirmed.