# PROVIDENCE COUNTY.

HENRY LIPPITT *vs.* THE AMERICAN WOOD PAPER COMPANY.[1]

The legal title to shares of corporate stock which are "assignable only on the books" of the corporation, will not pass by an assignment of the shares neither made nor recorded on the books of the corporation.

In Rhode Island an equitable or executory right to or interest in corporate stock is not attachable.

A. was the record owner of corporate stock. He assigned it to B. Afterwards B. assigned it to C., and this assignment was made on the books of the corporation. The stock never stood on the books of the corporation in the name of B.

*Held,* that the stock was not attachable as the property of B.

TRESPASS ON THE CASE to recover damages for the defendant's refusal to transfer certain corporate stock.

*A. & A. D. Payne* and *Benjamin N. Lapham,* for plaintiff.

1. The statutes authorizing the attachment of stock or shares of a defendant in any incorporated company, and the sale thereof

---

[1] See *Lippitt* v. *American Wood Paper Co.* 14 R. I. 301.

on execution, and which define the scope of the sheriff's deed thereof, speak of the stock or shares of the defendant, not of the stock or shares of the defendant standing in his name on the books of the company.   Gen. Stat. R. I. cap. 196, § 21 ; cap. 212, § 19.

On February 8, 1875, Isaac Hartshorn, by his attorneys, transferred to Morton C. Fisher one hundred shares of the capital stock of the American Wood Paper Company, represented by certificate 241.   This is the date of the transfer, and, in the absence of evidence to the contrary, it must be presumed to have been delivered on the day of its date.   A transfer of corporate stock is to be distinguished from a bill of sale of tangible chattels. In the case of the latter, proof of the date of actual delivery may be required.   In the case of corporate stock, delivery of the transfer and of the thing transferred are one and the same act.   We have also the evidence of Lippitt that the treasurer of the company knew and told him that it had been delivered prior to the date of the attachment.

By force of this transfer, Morton C. Fisher became the absolute owner of one hundred shares of the capital stock of this company. He had the right to present certificate No. 241, with this transfer, to the company, and demand a proper record of his title upon the corporate books.

And this company has recognized this right, dating back to February 8, 1875, because, on the presentation to them of the papers, and upon the strength of them, they transferred the stock of Fisher, at his request, to Church.   By so doing, and by paying the dividends, on Fisher's order, to Church, it recognized that those papers made Fisher the owner of one hundred shares of capital stock on the 8th day of February, 1875.

2. The fact that the stock did not stand in the name of Fisher on the books is of no importance.

This court has decided that the stock of a defendant may be attached, though not standing in his name on the books of the company, if the transfer from his name be tainted with fraud. *Beckwith* v. *Burrough*, 14 R. I. 366.

Will fraud protect the defendant because he employs it to prevent the stock getting into his name at all ?

The question of legal or equitable ownership is of no impor-

tance, and does not apply in the case at bar. That stock may stand in the name of one person upon the books of a corporation, the beneficial interest of which is in another, as where one holds as trustee for another, or where the stock has been pledged, may raise a distinction between the legal and equitable title to the stock in some general sense. But the title of an absolute owner is none the less legal because the evidence of it has not been recorded upon the books of the company. Upon any different construction of the language of our statutes, the owner of any quantity of stock, well known by the company to be its owner, and by them treated as its owner, having the privileges and responsibility of ownership as between himself and the company, might permanently withdraw his stock from legal process, and thus hinder, delay, and defraud his creditors, which was clearly the intention of Fisher, as shown by his subsequent conduct produced in evidence.

Further, the statute provides that the deed of the sheriff shall vest in the purchaser all the right, title, and interest of the defendant, not merely his legal title ; it covers an equitable title as well. Gen. Stat. R. I. cap. 212, § 19.

3. The by-law of the company requiring transfer to be made on its books is not conclusive in this matter. Its purpose simply is to enable the company to know who are the owners of its stock ; if they know in any other way, they are equally bound by that knowledge.

By Gen. Stat. R. I. cap. 197, § 9, it is made the duty of the treasurer, in case of an attachment, to report to the court what stock or shares the defendant had in the corporation at the time of the attachment. To give this information is, therefore, strictly within the line of his official duty. When, therefore, he reported to the attaching creditor, prior to the attachment, that the defendant was the owner of one hundred shares of the stock of the company, he bound the company to the same extent that he would have done if he had made the report to the court after the attachment. That officer of the company, whose province it is to have knowledge of who are the owners of stock in the company, comes officially into the possession of the knowledge, and, by communicating it to another, induces him to do that which otherwise he would not have done.

4. The case of *Wilcox* v. *Emerson*, 10 R. I. 270, was decided by a majority of the court, Mr. Justice Potter delivering a dissenting opinion.  Its doctrine should not be extended beyond a precisely similar state of facts.  In that case the statute required an advertisement, and the officer, in his return, did not say that he had advertised at all.  Proof that he had advertised was offered and rejected.  In the unreported case of *Hazard* v. *Clegg*, proof was offered and rejected that a return correct in form was false in fact.  No question of the construction of a return was before the court in either case.  In the case at bar no proof is offered to explain or contradict the return.  The question is: Where the levy is directed to be made by the statute in a certain way, and can be made in no other, and the officer returns that he levied the execution, the court will construe the return in accordance with the presumption that the officer did his duty.

*Charles P. Robinson*, for defendant.

*July* 25, 1885.  DURFEE, C. J.  This is an action on the case to recover damages of the defendant corporation for refusing to the plaintiff the rights of a stockholder in the corporation.  The plaintiff claims to be entitled to one hundred shares of stock formerly attached as the property of one Morton C. Fisher, in an action against him, and sold on execution under a judgment recovered against Fisher in said action, the plaintiff being the purchaser.  The defendant contests the right of the plaintiff on the ground, among other grounds, that Fisher had no legal, and therefore no attachable, interest or title.  Prior to February 8, 1875, said shares belonged to Isaac Hartshorn, and stood in his name on the corporation books.  On February 8, 1875, Isaac Hartshorn, by his attorneys in London, transferred said shares by deed of assignment to Morton C. Fisher, then in London.  The shares were attached as aforesaid, as the property of Fisher, February 16, 1875.  At that time they stood in the name of Hartshorn on the books of the corporation.  They were never afterwards transferred into the name of Fisher on the books; but on September 4, 1876, they were, at the request of Fisher, transferred on the books of the corporation to George Earl Church, the transfer being signed "Morton C. Fisher, by William S. Slater, Treasurer."  The sale on execution to the plaintiff took place March 20, 1882.  The char-

ter of the corporation provides that the "shares shall be trans-
ferred in such manner as shall be prescribed by the by-laws of
said corporation." One of the by-laws enacts: " The stock shall
be assignable only on the books of the company, by the person in
whose name the same appears, or by his legal representative ; but
no transfer shall be made or certificate issued thereupon until the
certificate originally issued be surrendered and cancelled." The
defendant contends that, by force of this provision and by-law, the
legal title of the hundred shares was, on February 16, 1875, when
the attachment is claimed to have been made, in Hartshorn, and
that Fisher had, under the assignment to him, only an equitable
or beneficial title, which, however good it may have been between
him and Hartshorn, was not attachable. The question, therefore,
is whether the shares were attachable as the property of Fisher
on February 16, 1875.

The plaintiff contends, *first*, that Fisher had the legal title;
and, *second*, that the shares were attachable even if he had only
an equitable or executory title. We do not think he had the legal
title. It seems to us that it is impossible to hold that shares
which are " assignable *only* on the books " can be assigned so as
to pass the legal title by an assignment neither made nor recorded
on the books. This is the view which has generally prevailed in
the courts where the question has arisen. *Fisher & another* v.
*Essex Bank,* 5 Gray, 373 ; *Blanchard* v. *Dedham Gas-Light Co.*
12 Gray, 213; *Marlborough Manufacturing Co.* v. *Smith,* 2 Conn.
579; *Northrop* v. *Newton & Bridgeport Turnpike Co.* 3 Conn.
544 ; *Shipman* v. *Ætna Insurance Co.* 29 Conn. 245; *Naglee* v.
*Pacific Wharf Co.* 20 Cal. 529 ; *State Insurance Co.* v. *Sax,* 2
Tenn. Ch. 507; *Williams* v. *The Mechanics' Bank of New Haven,*
5 Blatch. 59 ; *Brown* v. *Adams,* 5 Bissell, 181 ; *Broadway Bank*
v. *McElrath,* 13 N. J. Eq. 24 ; *Black et al.* v. *Zacharie,* 3 How.
U. S. 483 ; *Otis, Adm'r,* v. *Gardner et al.* 105 Ill. 436 ; *Farmers'*
*Nat. Gold Bank* v. *Wilson,* 58 Cal. 600 ; *Application of Thomas*
*Murphy,* 51 Wisc. 519 ; *Union Bank* v. *Laird,* 2 Wheat. 390 ; *Pitts-*
*burg & Connellsville R. R. Co.* v. *Clarke & Thaw,* 29 Pa. St. 146.
Some of these cases hold that an attachment of shares of stock, as
the property of the person in whose name they stand, will prevail
over a prior *bonâ fide* transfer for value not made nor recorded on

the books, though others hold that the transfer is entitled to priority notwithstanding that it carries only an equitable title. The case of *Fisher & another* v. *Essex Bank, supra,* is a case in which the attachment was sustained with great force of reasoning, the opinion being delivered by Chief Justice Shaw.

The attachment here, therefore, was not good unless an equitable or executory right or interest in stock is attachable under our statute. At common law an equitable right or interest in personal property is not attachable; Freeman on Executions, § 116; and it is natural to suppose that the intention of the statute, in subjecting corporate stock to attachment and levy, was simply to put it on a par with other personal property. This view accords with the language of the statute. It is " the shares of the defendant," or his " stock or shares," and not his right or interest in the stock or shares, which, in the words of the statute, may be attached or levied upon. Gen. Stat. R. I. cap. 196, § 21; cap. 197, § 9; cap. 212, §§ 18, 19, and 20. Pub. Stat. R. I. cap. 207, § 22; cap. 208, § 9; cap. 223, §§ 20, 21, 22. The officer with process is authorized to make attachment or levy by leaving a copy of the writ or execution with an officer of the corporation. Evidently the idea is that the copy shall operate by way of notice or garnishment to designate and hold the stock in the charge of the corporation for the purpose of the attachment or levy; and it can accomplish this effectually only when the stock stands in the name of the defendant on the books of the corporation. If the defendant does not appear on the books as a stockholder, the copy conveys no knowledge of what stock is intended to be attached, unless the corporation happens to be otherwise informed that the defendant is a transferee by transfer not on the books. The statute, moreover, makes it the duty of an officer of the corporation served with a copy of the writ to render an account on oath of what stock or shares the defendant had in the corporation when the writ was served. It cannot be supposed that it was the intention of the statute to make it the duty of the officer to render this account from information obtained otherwise than officially or from the books. For how can the officer render an account of what stock or shares the defendant had, if by " stock or shares " the statute means not only the stock or shares standing in the

name of the defendant on the books, but also stock or shares transferred in any other manner so as to vest in him an equitable or executory title ? Certificates of stock are often issued with blank assignments with power printed on their backs. A stockholder, in order to transfer the equitable title to the stock, has only to indorse and deliver such a certificate, leaving the blanks to be filled by the holder. A certificate so indorsed will pass from hand to hand, carrying the equitable title with it, like a note payable to bearer. Now, suppose that A., a stockholder of record, so transfers his shares to B., and that a creditor of B. issues a writ against him directing the attachment of the stock or shares of the defendant, which is served by leaving a copy with the corporation. The copy will only inform the corporation that the stock or shares of B. are attached, but not what stock or shares B. has, if he can have any not shown by the books, nor what stock or shares are intended to be reached by the attachment. But directly B. passes the certificate to C., and C. filling the blanks perfects his title by transfer on the books, the corporation having no knowledge that the shares transferred are the shares intended to be attached. Now can it be that the corporation is bound by the attachment ? It is, if the plaintiff's construction is correct. It seems to us that if the General Assembly had intended such a construction, it would have shown its intention by providing some surer and more efficient procedure. It seems to us, too, that such a construction is repugnant to the clear indications of the statute. It may be said that the corporation might protect itself by inquiry of the attaching creditor. Sometimes it might, perhaps, but certainly not always ; and we see no reason to think that it was ever intended to subject the corporation to the burden and risk of such an inquiry. An attachment, to be really such, ought to operate as a taking and holding of the thing attached.

The plaintiff cites no case to this point. The only cases bearing upon the point which we have found are *Foster* v. *Potter*, 37 Mo. 525, and *Middletown Savings Bank* v. *Jarvis*, 33 Conn. 372. In those cases it was held that an equity of redemption in stock, transferred on the books of the corporation by way of mortgage to the mortgagees, was liable to levy, or to attachment and levy, under the statutes of those states. But the decisions were

largely influenced by the language of the statutes; the statutes recognizing the right to take stock under incumbrance, and providing a carefully contrived procedure for the identification of the rights or shares taken and sold, and for the protection of all concerned. See Gen. Stat. of Missouri, cap. 160, §§ 25, 26, 53; Gen. Stat. of Connecticut, cap. 2, § 19; cap. 14, § 237. It would seem, moreover, that in both states, certainly in Connecticut, the statutes in express terms extend not only to " stock or shares," but to " rights or shares; " and in the Connecticut case the court say, " the language is broad, and expressly includes not only the shares of stock, but the rights in them," as a reason for holding that equitable rights are subject to attachment and levy. We do not think the cases are entitled to much weight here, our statute being so different. The plaintiff directs our attention to Gen. Stat. R. I. cap. 212, § 19, which provides that the officer's deed of stock sold on execution " shall vest in the purchaser all the defendant's right, title, and interest in such shares so sold," and contends that the language covers *all* interests, equitable as well as legal. This argument, it seems to us, involves the fallacy known as arguing in a circle, or begging the question; for it is a deed given in pursuance of a valid levy and sale which is to have this effect; and, therefore, unless an equitable right is subject to levy and sale, a deed to carry out such levy and sale is of no avail. It is clear that if such rights were subject to levy and sale, a sale of them without identification or any disclosure in regard to them, as the sale, if authorized, might be made, would generally be nothing but a most unconscionable sacrifice. In *Beckwith* v. *Burrough*, 14 R. I. 366, we decided that shares of stock were liable to attachment and execution sale as the property of the defendant, notwithstanding his previous transfer of them on the corporation books, if the transfer was made in fraud of the attaching creditor. We so decided, not without a good deal of hesitation, being pressed by the language of the statute, on the ground that the transfer, being fraudulent and void as against the creditor, might be treated as to him as a mere nullity. In the case at bar we are asked to go further, and hold that shares, which are assignable only on the corporation books, are liable to attachment and execution sale, as the property of a defendant, when they have not

been so assigned to him and do not stand in his name, if they have been assigned to him by transfer not on the books, so as to vest in him an equitable title. We have come to the conclusion, after a careful study and consideration of the subject under the statute, that we cannot so decide. See, also, *Beckwith* v. *Burrough,* 13 R. I. 294, 298.

The circumstances of this particular case are such as appeal to us strongly in favor of the plaintiff, but we do not find that they are such as will entitle us to decide in his favor without holding what we are not prepared to hold, namely, that merely equitable rights in stock are liable to attachment and execution sale. We do not think the corporation is subject to any estoppel; for, though the writ issued against Fisher, directing the attachment of his stock and shares in consequence of information received partly from William S. Slater, who was the treasurer of the corporation, that the shares had been transferred to Fisher, it does not appear that the information was, or was understood to be, that the shares had been transferred upon the corporation books. Whether, if the information given had been that the shares had been transferred upon the books, it could have created an estoppel which would avail the plaintiff, we need not decide.

*Judgment for defendant for costs.*