FEIGE *v.* BURT.[1]

118    243
s124    566

1. STOCK AND STOCKHOLDERS—PLEDGE—TRANSFER ON BOOKS—CONVERSION.

   A pledgee of shares of stock indorsed in blank may protect his special property therein by having the same transferred on the books of the company, and new stock issued in his name; but if he goes further, and uses such stock as if it were his own, he is guilty of a conversion.

2. SAME—SALE ON EXECUTION.

   Shares of stock pledged as collateral security for a debt of the stockholder, and transferred on the books of the company to the pledgee, cannot be sold on an execution against the debtor.

3. SAME—STATUTORY RIGHTS—STRICT COMPLIANCE.

   The right to subject shares of stock to execution being purely statutory, the provisions of the statute authorizing it ( 2 How. Stat. § 7697 *et seq.*) must be strictly complied with.

4. SAME—SALE AFTER DEFAULT—NOTICE.

   While stock pledged to secure the payment of a debt may, in case of default, be sold by the pledgee, without judicial proceedings, upon notice to the pledgor, a sale without notice constitutes a conversion.

5. SAME—DEMAND AND TENDER.

   When a pledgee of stock wrongfully sells it, the pledgor may sue for the conversion without first tendering the debt or demanding a return of the stock.

6. SAME—DAMAGES FOR CONVERSION—RECOUPMENT OF DEBT.

   In such action the pledgee is entitled to recoup the amount of the debt.

Error to Saginaw; SNOW, J.   Submitted June 15, 1898. Decided September 27, 1898.

Trover by Ernest Feige against Wellington R. Burt and the Home National Bank of East Saginaw. From a judgment for defendants on verdict directed by the court, plaintiff brings error.   Reversed.

[1] Rehearing denied January 20, 1899.

*Weadock & Purcell*, for appellant.

*Humphrey & Grant*, for appellees.

MOORE, J.  Plaintiff sued defendants, in an action of trover, to recover the value of 20 certificates, representing 800 shares of stock in the Feige-Silsbee Furniture Manufacturing Company, claimed by him to have been unlawfully converted by defendants.  The circuit judge directed a verdict in favor of defendants.  Plaintiff has appealed the case to this court.

Prior to 1888 the plaintiff was one of the incorporators of the Feige-Silsbee Furniture Manufacturing Company (which name was changed, later, to the Feige Desk Company).  He was a borrower of the defendant bank.  November 8, 1888, he pledged to the bank the certificates of stock already mentioned, indorsing them in blank, and at the same time a paper was executed reciting the deposit of the certificates, "to be held by said bank as collateral security for any obligation which I may now have or hereafter have" in said bank.  May 1, 1895, Mr. Feige gave his note to the bank in the sum of $6,650, due in three months.  The defendant Burt became a stockholder in the furniture company some years ago.  He was its president when this note was given, and continued to be its president from that time on.  Mr. Feige was a director, and for some time had been manager, of the company.  Mr. Burt was also president of the bank.  It is the claim of the plaintiff that Mr. Burt and the bank conspired together to depreciate the value of the stock, and to deprive him of it without compensation, and to displace him from his position as director and manager of the company.  He says on February 10, 1896, the bank, without notice to him, through its president, Mr. Burt, surrendered the 20 certificates of stock, and one certificate in lieu thereof was issued to the bank for the 800 shares, and the 20 certificates were canceled.  He claims the certificate so issued was never returned to the furniture company.  He says Mr. Burt, as president of the company, refused to recog-

nize him as a stockholder at the meeting of the stockholders of the company, in February, 1896; that he was then displaced as director and manager; that he was refused access to the books of the company; and that the secretary of the company and Mr. Burt declared he had no interest as a stockholder or otherwise in its affairs. He further claims that, in the annual report made to the secretary of state, it was reported the 800 shares of stock which had been previously represented as held by him were owned by the bank. He claims that what was done was done, not for the purpose of collecting the debt, but for the purpose of depriving him of his stock. It is the claim of Mr. Burt and of the bank that what they did was done in good faith; that, for the purpose of making the bank secure against possible levies by creditors, the bank had a right to surrender the certificates, and have one issued in its name; and that it did not claim to be the absolute owner of the stock as against plaintiff, but always recognized his right to it upon his payment of the debt to secure which it was turned out.

May 18, 1896, the bank obtained judgment upon the note given by Mr. Feige, and caused an execution to be issued and placed in the hands of a deputy sheriff, who served a copy of it upon the secretary of the company, who on June 10, 1896, issued the following certificate:

"C. Dingman,
        "Deputy Sheriff for Saginaw County, Mich.

"*Dear Sir:* You are hereby notified that, as appears by the books of the Feige Desk Company, of Saginaw, Michigan, a corporation, Ernest Feige is the owner of 800 shares of the capital stock of said company, of the par value of $25 each, subject, however, to the interest therein as pledgee of the Home National Bank of East Saginaw, Michigan. Said stock is represented by certificate No. 100, issued February 10, 1896, to said Home National Bank.

                "Yours truly,
                        "G. R. Burt,
        "Sec. and Treas. of the Feige Desk Co."

As a matter of fact, the stock at this time stood upon the books of the company in the name of the bank. The stock was advertised and sold by the sheriff for $400, and this amount was paid over to the bank. Before suit was brought, no tender was made of the debt and no demand made for the stock. It is the claim of plaintiff that what occurred in February amounted to a conversion of the stock, and that the court erred in refusing to submit to the jury the question of whether there had been a conversion or not.

Where stock is pledged to secure the payment of a debt, in default of payment the pledgee may not at once convert the stock to his own use, but he may give notice to the pledgor of an intent to sell the stock, and may so sell it, without any judicial proceedings, and apply the proceeds to the payment of the debt. 1 Cook, Stock, Stockh. & Corp. Law, § 476. A sale without a notice is a conversion of the stock; and, in the absence of any agreement, the sale must be at public auction.

It is the claim of defendants that there was no attempt to deprive plaintiff of his stock in February, and that the pledgee of shares of stock has a right to have the stock transferred, and new shares issued in his name, and that doing so does not amount to a conversion; citing Coleb. Coll. Sec. § 288; *Day* v. *Holmes*, 103 Mass. 306; *Heath* v. *Griswold*, 18 Blatchf. 555; *Heath* v. *Smelting Co.*, 39 Wis. 146; *Rich* v. *Boyce*, 39 Md. 314; 1 Cook, Stock, Stockh. & Corp. Law, § 466. These authorities sustain the position of counsel; but it is the claim of plaintiff that defendants went further than this; that they used the stock as though it was the stock of the bank, and denied that plaintiff had any right in it or in the company. Plaintiff gave testimony tending to support his claim. We think there were sufficient facts shown so the question should have been submitted to the jury.

Was there a conversion by the levy upon and sale of the stock? A share of stock is in the nature of a chose in action, and at common law a chose in action could not be

reached by or made subject to a levy of execution. Consequently it has been uniformly held by the courts that at common law a levy of execution could not be made on shares of stock. 1 Cook, Stock, Stockh. & Corp. Law, § 480; *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 204. As the levy upon execution is authorized only by virtue of the statute, its provisions must be substantially observed. 1 Cook, Stock, Stockh. & Corp. Law, § 482. 2 How. Stat. § 7697, provides that any share or interest of a stockholder in any joint-stock company may be taken in execution. The next section provides that a copy of the execution shall be left with the person having the custody of the books and papers of the company. The next section reads:

"The officer of the company who is appointed to keep a record or account of the shares or interest of the stockholders therein shall * * * be bound to give a certificate of the number of shares or amount of the interest held by such judgment debtor."

As we have already seen, none of the certificates of stock stood upon the books of the company in the name of Mr. Feige after February 10th. This was known to the secretary of the company, and to the bank; but, knowing this, the bank levied upon the stock as though it stood in his name, sold it, and took the avails of the sale. This sale cannot be justified as an execution sale by a creditor of Mr. Feige. *Blair* v. *Compton*, 33 Mich. 441; *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 208; *Gypsum & Stucco Co.* v. *Kent Circuit Judge*, 97 Mich. 631.

Can the sale be justified as a sale by the pledgee? We have already seen the sale cannot be made until notice has been given to the pledgor of the intention to sell. "A sale without a notice is a conversion of the stock." 1 Cook, Stock, Stockh. & Corp. Law, § 477. In *Stearns* v. *Marsh*, 4 Denio, 227 (47 Am. Dec. 248), it is held, if the pledgee sell the property, without calling on the pledgor to redeem, the latter may maintain an action for the value of the thing pledged, without tendering the debt, because

by the wrongful sale the pledgee has incapacitated himself to perform his part of the contract,—that is, to return the pledge,—and it would therefore be nugatory to make the tender; citing Story, Bailm. § 349; *M'Lean* v. *Walker*, 10 Johns. 471. In such case the pledgee may recoup the amount of his debt.

The sale made was an unlawful sale, and amounted to a conversion. The plaintiff was entitled to recover the value of the shares of stock, less the amount of the debt.

The judgment is reversed, and a new trial granted.

GRANT, C. J., HOOKER and LONG, JJ., concurred. MONTGOMERY, J., did not sit.