BARNARD REALTY CO., APPELLANT, *v.* CITY OF BUTTE,
RESPONDENT.

(No. 3,917.)

(Submitted December 4, 1918. Decided December 30, 1918.)

[177 Pac. 402.]

*Cities and Towns — Streets and Highways — Easement by Pre-
scription—Evidence—Insufficiency—Appeal and Error—Law
of Case—Equity Cases—Review.*

Appeal and Error—Law of Case.
  1.  A holding of the supreme court on appeal becomes the law of the
  case on a retrial and on a subsequent appeal.

Cities and Towns—Streets—Easement by Prescription.
  2.  The mere use of land as a public street or highway for the statu-
  tory period, not coupled with an assumption of jurisdiction over it by
  the city authorities, does not vest the city with title by prescription to
  an easement in it.

Appeal and Error—Equity Cases—Extent of Review.
  3.  The supreme court on appeal in equity cases must, under sec-
  tion 6253, Revised Codes, review and determine all questions of fact,
  due allowance being made for the more advantageous position occupied
  by the trial judge in passing upon the credibility of the witnesses, as
  well as questions of law, unless for good cause shown a new trial should
  be ordered.

Cities and Towns—Streets—Easement by Prescription—How Acquired.
  4.  A city cannot acquire a prescriptive right to an easement in land
  for street purposes, unless public travel has pursued a definite, fixed
  course over it for the statutory period.

  [As to creation of title by prescription, see notes in 14 Am. Dec. 67;
  95 Am. St. Rep. 671.]

Same—Acquisition of Easement—*Quantum* of Proof.
  5.  The assertion of an easement in land for street purposes based
  upon adverse user for the statutory period, must be supported by clear
  and convincing proof.

*Appeal from District Court, Silver Bow County; J. J. Lynch,
Judge.*

ACTION by Barnard Realty Company against the City of
Butte. From a decree for defendant and an order denying
its motion for new trial, plaintiff appeals. Reversed, with
directions to enter decree for plaintiff.

Authorities passing on the question of easement in highway acquired by
prescription are collated in a note in 11 L. R. A. 55.

*Mr. E. M. Lamb* and *Mr. E. B. Howell,* for Appellant, submitted a brief; *Mr. Howell* argued the cause orally.

*Mr. J. V. Dwyer, Mr. John A. Groeneveld* and *Mr. N. A. Rotering,* for Respondent, submitted a brief.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is the second time this cause has been before this court. The first trial in the district court resulted in findings and a decree in favor of the defendant.   On appeal this court reversed the decree and awarded plaintiff a new trial on the ground that the evidence was insufficient to sustain the findings (48 Mont. 102, 136 Pac. 1064).   By referring to the statement preceding the opinion delivered on that appeal, illustrated by the accompanying diagram, a full understanding may be had of the subject matter involved.   Before the second trial the defendant was permitted to amend its answer by alleging an easement in the area of land in controversy shown by the heavy lines on the diagram, by adverse possession and use of it by the general public as a street and highway for a period of twenty-two years at the time the action was commenced.   Otherwise the issues remained the same.   The court again found in favor of the defendant, and rendered and entered a decree accordingly.   Plaintiff has appealed from the decree and an order denying its motion for a new trial, and submits the single question whether the evidence is sufficient to sustain the findings.

The court found: (a) That the general public traveled over the area in dispute and used it as a street and highway continuously from the year 1899 to July, 1911, the date of the commencement of this action; and (b) that in the latter part of the month of June, 1901, the defendant assumed control of and exercised jurisdiction over the said area, and treated it as a public street and improved it as such.   The defendant introduced witnesses whose testimony tended to show that, while the area included in the Saturn and Neptune additions was sub-

stantially open and unoccupied after the Barnard addition was made to the city in 1899 and the area immediately to the north of the area in dispute (designated on the diagram by the word "Alley") was dedicated as a highway, the area in controversy was commonly traveled by persons who wished to go from the city to Rocker and other points lying to the southwest, or who traveled from these points to the city. For illustration, the witness Stephens testified that he was familiar with the area as early as the summer of 1896; that at that time it was used by the public generally as a roadway, the line of travel conforming to a straight line from Alabama Street north of Mercury Street directly south to Silver Street and turning thence to the west along that street. Other witnesses testified to the same effect, some of these asserting that the public generally had traveled on a direct line from the alley south of the Columbia and Barnard additions to Silver Street and then west along that street as early as 1886. One of them stated that the roadway occupied substantially the entire width of the space included within the heavy lines, causing it to present the same general appearance as the dedicated portion of Alabama Street to the north. Some of these witnesses resided during the years 1900, 1901 and 1902, either on Mercury Street to the west of Alabama Street, or on lots in the Saturn and Neptune additions. Though these additions had been platted some years prior to 1900, most of the lots remained unoccupied until that year or later. Other of the witnesses resided at points to the west or southwest of the city. These traveled from that direction over the disputed area to and from the city, as occasion required. Still others resided in other parts of the city to the east, but traveled over the ground in dispute as their business called them in that direction.

Hugh Smith, at one time the assistant street commissioner of the defendant, testified that in June, 1901, he extended a ditch which had theretofore been constructed on the west side of Alabama Street from Galena Street to the alley in a direct line south of the alley to Silver Street to drain off the surface water in order to prevent it from cutting up the beaten way of travel

immediately east of the line of the ditch described by the other witnesses. This he stated was done at the expense of the city. At the former trial this witness had testified that he had extended the ditch in June or July. He explained the change in his testimony by saying that he recollected that he did the work during the rainy season, which occurs in Montana during the month of June. To corroborate his statement, the defendant introduced the testimony of the local observer of the United States Weather Bureau. By his records this witness showed that the rainy season for the year 1901 occurred during the months of May and June of that year, and that no more than light showers fell during July, the last falling on the 13th.

The testimony of these witnesses is not as clear and convincing as it might have been, but, taken as a whole, it is sufficient to make out a *prima facie* case that the area in controversy was used as a highway for travel along a direct line south of the alley to Silver Street and to the entire width of it, and that the city assumed jurisdiction and control over it in June, 1901, more than ten years before the action was commenced. We are nevertheless of the opinion that, taking into consideration the opportunities the plaintiff's witnesses had to observe and inform themselves as to the condition of the disputed area and the adjoining areas to the west and the character of travel over them by the public prior to 1901 when the lots in the Neptune and Saturn additions began to be occupied by residences, confirmed, as it is, by maps and plats and photographs showing the actual conditions upon the ground, as to the correctness of which there was no substantial controversy, their testimony as a whole is entitled to so much greater weight that it preponderates decisively against the conclusion reached by the court. For illustration:

It was shown by a geological map made of the city and the surrounding country in 1895, under the direction of the United States government, that at the time the areas now covered by the Columbia, Barnard, Neptune and Saturn additions were open and unoccupied. A building referred to as ''Clark's

barn" was located on what is now the southwest corner of Porphyry Street and Excelsior Avenue, the former being one block south of Silver Street, and the latter one block west of the disputed area. The general travel from the city to the south and west was then confined to two roads, both leaving the city from Park Street one block north of Galena Street. One of these extended from Park Street in a southwesterly direction, passing near Clark's barn, the other lying farther to the north and extending in a more westerly direction. No line of travel is shown by this map over the disputed area from what was then dedicated as a portion of Alabama Street to the north. Several witnesses testified that this map correctly represented the routes of travel to the south and southwest at that time, and no witness questioned its correctness. Generally, the evidence tended to show that as the lots in the several additions to the west of Alabama Street toward the north began to be occupied in 1901, 1902 and 1903, the most direct line of travel to the southwest was from the point where the alley south of Galena Street crosses Alabama Street "across lots," until it was gradually forced east to a line along the west boundary of the Barnard placer. The line thereafter ran, not in a direct line with the dedicated portion of Alabama Street north of the alley, but along the west boundary of the Barnard placer turning to the west over the first vacant lot reached. The reason assigned by these witnesses for this course of travel was that up to 1889 mining operations were extended from Missoula gulch toward the west as far as the west boundary of the disputed area and north to the south line of Mercury Street, leaving the surface ground rough and uneven to such an extent that travel over it, though practicable, was very inconvenient. Even after it became impossible to go "across lots" at all by reason of the erection of buildings on the lots in the Saturn and Neptune additions, the line of travel was along the triangular strip west of the disputed area, and this line is still followed from Mercury Street. That this was the condition until 1902 was demonstrated by a photograph taken of a foundation of a building in

course of erection on lot 2 in the block immediately south of Mercury Street. The beaten line of travel, as appears from this photograph, was then over lot 1, and at that time there was no evidence of the drain ditch directly south of the alley which Smith testified he dug for the city in June, 1901.

The witness Perry, who was employed by Mr. Barnard, the predecessor of plaintiff, to look after mining operations conducted by Barnard within the area of the placer, became familiar with the surface of the ground in January, 1899. At that time, he stated, there was no Silver Street, and the alley was the end of travel from Alabama Street to the south. The reason for this was that the mining operations had left the disputed area so uneven that vehicles could not easily pass over it. This condition continued, particularly south toward Silver Street, until 1906. The whole area covered by the Barnard placer began to be used as a dumping ground by the city in 1894. After the dumping had rendered the surface sufficiently smooth and even to permit persons having occasion to travel from the eastern part of the city toward the west and southwest to drive over it, they proceeded by any line the particular person chose to follow.

The witness Monroe, a surveyor, had been familiar with the Barnard Placer for about twenty years. In September, 1911, he made a map of the entire area. This map, which was introduced in evidence, shows that even at that time, instead of a single line of travel from the alley south to Silver Street, there were two, one following a somewhat irregular course over the disputed area, and the other to the west along the triangular strip from Mercury Street to Silver. Connecting with this at Mercury Street were two branches, one leading to the northeast and the other directly east, both extending toward the eastern part of the city. The irregular line over the disputed area connected with another line of travel extending from near Mercury Street southeast toward the southeastern part of the city. From various points along the course of both of these lines to the east and west were other lines running in various

directions. This condition had continued from 1906 or 1907. Silver Street was first surveyed in 1905. It was opened in 1907. The witness Kydd, who was the city engineer and who made the survey, testified that when he made it in 1905, the southern part of the disputed area was in a rough and uneven condition, rendering it impracticable for travel. This statement was corroborated by a profile map of Silver Street made at the time. He stated that when this profile was made there was no ditch extending along the west side of the disputed area to Silver Street; that if one had been there he would have observed it, and it would have appeared upon the profile. At the same time he made a chart of what would have been the intersection of Silver Street with Alabama Street, indicating the latter by dotted lines as a projected street only, because it was not then regarded an open street.

The witness Metcalf was employed in 1906 by the local telephone company to haul the poles for a telephone line to be constructed along the east side of the disputed area. He drove by way of Silver Street to the disputed area. In some places he was able to drive over the surface; in others the surface was so rough and uneven that he could not drive over it and was compelled to distribute the poles along the east line by "snaking" them over the ground with a team. During the year 1900 the city caused Mercury Street to be graded. The grading was stopped at the west boundary of the Barnard placer.

Aside from the digging of the ditch by Smith, the earliest act done by the city authorities, indicating an assumption by them of control over the disputed area, was the installation of arclights at Mercury and Silver Streets in the fall of 1903.

On the former appeal we held that under section 1340 of the [1, 2] Revised Codes, which is identical with section 2603 of the Political Code of 1895, the mere use of land as a public street or highway for the statutory period, not coupled with an assumption of jurisdiction over it by the city authorities, was insufficient to clothe the city with title to an easement over it by prescription. That holding became the law of this case.

If this were a case at law in which the evidence were in the condition disclosed in the record, we would be compelled to sustain a verdict for defendant, because we could go no further than to determine whether the evidence introduced by the city [3] made out a *prima facie* case. In equity cases, however, such as this, we are required to review and to determine all questions of fact as well as of law, unless for good cause a new trial ought to be ordered. (Rev. Codes, sec. 6253.) The rule here declared is of necessity subject to the limitation that in determining questions of fact, due allowance must be made for the more advantageous position occupied by the trial judge, in that he has had the opportunity to observe the conduct and appearance of the witnesses while testifying. (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Delmoe* v. *Long*, 35 Mont. 139, 88 Pac. 778.)
[4] After a careful examination of the large volume of evidence, only the more salient parts of which are set forth above, we are constrained to the conclusion that the weight of it is decidedly against the conclusions reached by the trial court. We do not think it sufficient to justify the conclusion that travel by the public over the disputed area has pursued a definite, fixed course over it for the statutory period, without which the prescriptive right claimed could not attach. (*State* v. *Auchard*, 22 Mont. 14, 55 Pac. 361; *Montana Ore Pur. Co.* v. *Butte & B. Consol. Min. Co.*, 25 Mont. 427, 65 Pac. 420; 37 Cyc. 12.) Nor do we think it justifies the conclusion that the city authorities assumed jurisdiction over it for street purposes at any time definitely fixed by the evidence, prior to the fall of 1903. If we assume that the ditch along the west side of the disputed area was dug by the direction of the city authorities, the evidence as to when it was dug does not justify the conclusion that this was done as early as June, 1901. The testimony of Smith, the assistant street commissioner, is so far discredited by his own conflicting statements, by other witnesses and by the physical facts disclosed by the exhibits introduced at the hearing, as to require the conclusion that he was entirely mistaken as to

[5] when the work was done. The owner of land ought not to have it subjected to the burden of a servitude for a public street over it unless the evidence presented to establish the claim to it is clear and convincing. The evidence submitted by the defendant does not meet this requirement.

The judgment and order are reversed, and the district court is directed to find for the plaintiff and render a decree accordingly.

*Reversed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE PIGOTT concur.