FOUSEK, TRUSTEE, APPELLANT, v. DeFOREST ET AL., RESPONDENTS.

(No. 6,804.)

(Submitted September 29, 1931. Decided October 20, 1931.)

[4 Pac. (2d) 472.]

450

*Mr. A. H. Gray, Mr. J. H. Corcoran, Messrs. McKenzie & McKenzie, Mr. Frank Polutnik, Jr.,* and *Mr. Loy Molumby,* for Appellant, submitted an original and reply brief; *Mr. Gray* argued the cause orally.

*Messrs. Hurd, Hall & McCabe,* for Respondents, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On March 21, 1928, plaintiff obtained a judgment in the district court of Cascade county against Byron DeForest and Josef Ortopan in the sum of $344.75 and costs. On August 17, 1928, execution was issued and subsequently returned wholly unsatisfied. Later another execution was issued and placed in the hands of the sheriff, who levied on the right, title, and interest of Byron DeForest in and to thirty shares of fully paid stock in the Great Falls Building & Loan Association of the par value of $3,000, and in and to certain shares of stock in the Mountain States Building & Loan Association. Notice of attachment under the writ of execution was served

on the Great Falls Building & Loan Association, and it made answer that Byron DeForest has no stock in the association, but that Florence DeForest has thirty shares. About $22 was paid on the judgment as a result of the sale of some property under execution sale, but the balance due on the judgment remains unpaid and unsatisfied.

On proceedings supplementary to execution it was developed that in April, 1928, defendant Byron DeForest transferred the thirty shares of stock in the Great Falls Building & Loan Association to his wife, the defendant Florence DeForest, and this action was brought to have the transfer set aside upon the ground that it was without consideration and fraudulent, and made for the alleged purpose of hindering and delaying plaintiff in the collection of his judgment. The action was tried to the court without a jury, resulting in findings and a decree for defendants, from which plaintiff appealed.

The court found that Florence DeForest was at all times the owner of the thirty shares of stock, that the transfer was for a valuable and sufficient consideration, and that it did not render Byron DeForest insolvent. The correctness of these findings is challenged by plaintiff, and it is contended by him that the court erred in rejecting his requested findings to the effect that Byron DeForest was the owner of the stock, that the transfer was voluntary, that he did not retain sufficient property out of which the judgment might be satisfied, and that the transfer rendered him insolvent.

The rule is firmly established that findings of the trial court in an equity case will not be disturbed unless the evidence clearly preponderates against them (*National Bank of Anaconda* v. *Yegen*, 83 Mont. 265, 271 Pac. 612), and due allowance must be made for the more advantageous position occupied by the trial judge who observed the conduct and appearance of the witnesses. (*Barnard Realty Co.* v. *City of Butte*, 55 Mont. 384, 177 Pac. 402.) But where the attendant circumstances are such as to cast suspicion upon the transaction as narrated by interested parties (*Security State Bank* v. *McIntyre*, 71 Mont. 186, 228 Pac. 618), or where the condi-

tions and circumstances leave no room for a contrary conclusion, this court will not hesitate to overturn the findings of the trial court. (*Piersky* v. *Hocking*, 88 Mont. 358, 292 Pac. 725.)

In *Edenfield* v. *C. V. Seal Co., Inc.*, 83 Mont. 49, 270 Pac. ▆ 642, 646, it was aptly said: "This court and other courts have said, on many occasions, that a court cannot scrutinize too closely the relation between husband and wife with respect to business dealings between them where creditors are concerned. (*Keller* v. *Flanagan*, 66 Mont. 144, 158, 213 Pac. 222, 225.) The marital relation is often a convenient means for the perpetration of a fraud, and when claims of indebtedness are made between husband and wife, they must be subjected to the most searching examination, if not, indeed, suspicion. (*Lambrecht* v. *Patten*, 15 Mont. 260, 38 Pac. 1063; *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491.)"

Plaintiff proved by the records of the Great Falls Building ▆ & Loan Association that ten shares of stock were issued to Byron DeForest on July 10, 1926, and twenty shares on July 5, 1927; that the certificates were assigned by him to Florence DeForest on April 16, 1928, who was at that time in California, and no further transfer has been made; the first payment made on the ten shares of stock was on August 1, 1925, and the last on July 10, 1926; the first payment on the twenty shares was made January 26, 1926, and the last payment on July 1, 1927; the stock accounts were carried in the name of Byron DeForest. There was evidence that Byron DeForest had testified in the supplementary proceedings that he transferred all of his property to his wife, including his shotgun and rifle, retaining in his name an interest in some judgments which were shown to have been sold on execution sale for $25 and the proceeds applied to plaintiff's judgment; that he then said there was no consideration for the transfer and gave as his reason for the transfer that he was in the collecting business and was out of town a great deal. Each of defendants testified in this action that

the money that was used to pay for the stock belonged to Florence DeForest.

Defendant Byron DeForest, when asked on cross-examination in this case if he had not testified in the supplementary proceedings that he had "turned over his property of every kind, including his shotgun and rifle, to his wife, said 'I think I did.'" When asked whether in those proceedings he had testified that there was no money consideration for the transfer of the stock, he replied, "I don't recollect what I testified to." Mrs. DeForest testified on the trial of this action that in 1917 she was the owner of a ranch about eleven miles south of Great Falls; that she owned the ranch until the spring of 1926, when it was sold on a contract calling for installment payments; that during the time when she owned the ranch she lived on it in 1922, 1923, and 1924, during which time it produced an income which she thought amounted to more than $3,000; and that the income was applied and used for the payment of the stock certificates in question. She said she thought at all times they were carried in her name. During the year 1922 she thought they sold something over a thousand bushels of wheat. She said, "It would be impossible for me to remember back six or seven years the price of wheat," but that "there was something over a thousand dollars." The expense of raising the wheat was paid out of the office, but she did not know how much that expense was. The wheat, she said, was probably sold in the early winter months of 1922 and the money was thereupon paid to the Great Falls Building & Loan Association. The next year she sold between three and four hundred bushels, receiving something around a dollar per bushel for it. The expenses, the amount of which was not shown, were again paid by Mr. DeForest. Aside from wheat there was derived as income from the ranch that year "approximately around one hundred dollars." This, she said, was likewise paid into the Great Falls Building & Loan Association. She admitted, however, that so far as her statements as to the income for 1923 were concerned,

they might be more in the nature of guesses than with any idea of approaching accuracy.

In 1924 there were about 200 bushels of wheat and $250 worth of turkeys raised and sold, the proceeds of which, she said, were paid into the building and loan association. Sometimes she paid the money to the building and loan association, and sometimes Mr. DeForest did. She said she had no checking account, but most of the money was put in the bank in Mr. DeForest's agency checking account and then paid to the building and loan association. Certain machinery was sold and the proceeds, together with what was obtained from the sale of the ranch, were paid into the building and loan association. She said she had an agreement with her husband to the effect that he was to pay to the building and loan association so much a month regardless of the returns from the ranch, but when asked, "Do you remember when that was, 1902, 1922, 1923, 1924?" she answered: "No, I can't remember all those things." Mrs. DeForest at the supplementary proceedings testified concerning this same matter, in substance, as follows: That the certificates of stock were held in trust by her or by Mr. DeForest for their daughter; that it stood in his name and he transferred it to her in trust for the daughter; that Byron DeForest had cashed some life insurance and with the money bought the building and loan stock; that there was no cash consideration for the transfer, "merely love and affection"; that she had no income of her own; and that the money paid in on the stock was paid by her husband. She then said that the payments made on the ranch were deposited in the building and loan; at that time no claim was made that the income from the ranch was paid in on the building and loan stock. At the trial of this action she gave as her reason for not doing so that counsel who were questioning her were not interested in anything that came off the ranch; that counsel had said that was hers. The transcript of the testimony, however, does not show any statement by counsel to that effect.

Mrs. DeForest must have been mistaken regarding the payments claimed to be made for the stock in 1922, 1923, and 1924. They could not have been applied on the stock in question because the records disclose that the first payment on the stock was not made until August 1, 1925. It is a fair inference that those payments must have been applied on the mortgage indebtedness of defendants then owing to the building and loan association which the record shows was in the sum of $2,000 and which mortgage was executed on November 27, 1920, and satisfied on January 10, 1924.

The evidence clearly preponderates against the findings of the trial court that Florence DeForest has at all times been the owner of the stock, and that it was transferred for a good and sufficient consideration. The entire evidence has been given careful study by us and the findings of the trial court cannot be sustained in these respects. The court should have found that Byron DeForest was the owner of the stock and that the transfer was without consideration.

Did the transfer render Mr. DeForest insolvent within the ██ meaning of the law? The record is replete with evidence that after the transfer, though he had an income of $10,000 per year, Byron DeForest did not have property accessible to legal process sufficient to satisfy plaintiff's demand. One thus situated is regarded as insolvent (*National Bank of Anaconda* v. *Yegen,* supra), and, since Mrs. DeForest was a voluntary transferee, it is immaterial whether she knew of the facts and circumstances from which fraud is imputed to the assignor. (*National Bank of Anaconda* v. *Yegen,* supra.)

The court found that plaintiff acquired no lien upon the stock in question by levy of execution or otherwise. This finding evidently followed from the finding that Florence DeForest was the owner of the stock and on that theory it was proper. But since the finding that Florence DeForest was the owner of the stock cannot be sustained, then the finding that no lien on the stock was acquired by plaintiff cannot be sustained on that ground.

The court further found that execution was duly issued and duly levied on the right, title, claim, and interest of Byron De-Forest in the stock.

It is contended that the lien which was acquired by the levy of the writ of execution was lost when the return was made by the sheriff, and that the effect of the return was to render the writ *functus officio* and to discharge the lien of the levy. That this is the general rule is conceded. But under our statutes the class of property here involved, being in the nature of a certificate of deposit, is levied upon under the writ of execution in the same manner as upon a writ of attachment. (Sec. 9424, Rev. Codes 1921.)

When an attachment is made upon personal property in the possession of a third person (a garnishment), as here, it is sufficient to comply with the statute. (Sec. 9262, subds. 3, 4, 5, Rev. Codes 1921.) The liability of the garnishee is fixed by section 9267 and is shown by the return of the writ. (Drake on Attachments, sec. 451d.) When this has been done the property is *in custodia legis* irrespective of the answer made by the garnishee, and plaintiff has acquired such a lien or interest in the property as will enable him to hold the garnishee liable for the property or its value. (Drake on Attachments, sec. 453; Wade on Attachment, sec. 329; *Barton* v. *Spencer*, 3 Okl. 270, 41 Pac. 605; *Linn County Bank* v. *Davis*, 109 Kan. 758, 202 Pac. 97; *Berry-Beall Dry Goods Co.* v. *Adams*, 87 Okl. 291, 211 Pac. 79.)

The cases of *Wheeler & Motter Merc. Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665, and *Edenfield* v. *Seal Co., Inc.*, 83 Mont. 49, 270 Pac. 642, following the statute (sec. 9262, supra), have held that this is the proper procedure in this state in the case of a garnishment incidental to execution, as here, and we see no reason for departing from the rule.

Defendants, while conceding that shares of stock in a corporation are subject to attachment or execution (subd. 4, sec. 9262, and sec. 9424, Rev. Codes 1921), contend that this is so only when the books of the corporation disclose the interest of the defendant and that, since the books of the

corporation did not disclose that Byron DeForest had any interest in the stock, plaintiff acquired no lien because of the execution. The cases of *Van Norman* v. *Jackson Circuit Judge,* 45 Mich. 204, 7 N. W. 796, *Feige* v. *Burt,* 118 Mich. 243, 74 Am. St. Rep. 390, 77 N. W. 928, and *Lippitt* v. *Paper Co.,* 15 R. I. 141, 2 Am. St. Rep. 886, 23 Atl. 111, are relied upon in support of this contention.

The Rhode Island case of *Lippitt* v. *Paper Co.* does not support the contention. The contrary has been held by the supreme court of that state in *Beckwith* v. *Burrough,* 14 R. I. 366, 51 Am. Rep. 392, which ruling was not departed from in the *Lippitt Case.* Also, the court in the *Beckwith Case* pointed out that the Michigan case of *Van Norman* v. *Jackson Circuit Judge* rests upon certain statutory provisions peculiar to that state.

The better reasoned cases hold that corporate stock assigned or transferred in fraud of creditors is subject to attachment or execution against the assignor, though the books of the corporation do not disclose his interest. (*Beckwith* v. *Burrough,* supra; *Quarl* v. *Abbett,* 102 Ind. 233, 52 Am. Rep. 662, 1 N. E. 476.) The reason for this holding is that no title passes by virtue of such an assignment. The property attempted to be assigned still remains that of the assignor.

The judgment is reversed, and the cause remanded, with direction to enter judgment for plaintiff for the relief demanded by him.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.

Rehearing denied November 10, 1931.