IN RE LIQUIDATION OF COLUMBUS STATE BANK. KEM, APPELLANT, *v.* JOHNSON, SUPERINTENDENT OF BANKS, RESPONDENT.

(No. 7,106.)

(Submitted October 30, 1933. Decided November 8, 1933.)

[26 Pac. (2d) 643.]

Cause submitted on briefs of Counsel.

*Mr. M. L. Parcells,* for Appellant.

*Mr. John G. Brown* and *Mr. L. V. Ketter,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This proceeding is one initiated by O. T. Kem to establish a preferential claim to assets of the Columbus State Bank, insol-

vent. The proceeding had its inception before the liquidating officer, the superintendent of banks, who placed the claim in class 4, section 134, Chapter 89, Laws of 1927, thereby allowing it as a general claim, but denying the preference claimed. Kem appealed to the district court, where the action of the superintendent of banks was affirmed. From the action of the district court this appeal was taken.

While several specifications of error are made, they raise but one question, viz.: Under the facts presented, was the district court warranted in holding that Kem, at the time the bank closed, was a general creditor of the bank and only entitled to have the claim allowed and placed in class 4, Chapter 89, supra; or should it have been placed in class 2, as being a fund held in trust by the bank for Kem?

The case arose from the following facts: Kem had been a ▆ depositor of the bank for thirty years before it closed. He had a safety deposit box in the bank to which the officers of the bank had access. He transacted most of his business with the bank through John Logan, executive officer of the bank during most of that time. During these many years Kem bought negotiable paper from the bank, taking an assignment from the bank and leaving the paper with the bank for collection of interest and principal when due, and in most cases without the maker knowing that the paper had been assigned. When the bank made collections on such paper, the usual practice was to credit Kem's account in the bank with the amount of the collection and issue to him a duplicate deposit slip. This had been done as to interest on the Rathbun note in question here.

On December 17, 1928, Warren Rathbun borrowed $1,175 from the bank, giving his note therefor, secured by a mortgage on 196 head of sheep. On January 28, 1929, Kem purchased the note from the bank and took an assignment of it. He left it and the mortgage in the bank. On January 18, 1930, Rathbun executed to the bank a second mortgage covering the same sheep and other property to secure an indebtedness to the bank other than that for which the note of December 17, 1928,

was given. On December 6 the mortgage of January 18 was foreclosed and the property bid in by the bank. On December 12 the bank held a public auction sale at which the sheep covered by the mortgage held by Kem were sold. The net proceeds of the sale of these sheep amounted to $1,105. On December 5, and one day before the foreclosure sale, the bank wrote to Kem as follows: "We are going to have the Rathbun sale on the 12th of this month. Before the sale, we will arrange to take up the note which you hold so you will not have to bother with the sale."

On December 13, Kem said he demanded the proceeds of the mortgaged property from Logan and was advised by him that Anderson, another employee of the bank, handled the transaction and that Anderson was absent and had not yet made distribution of the proceeds. Kem testified that he then suggested that he should have something to show that he had something coming, whereupon Logan issued and delivered to him a duplicate deposit slip showing a credit of $1,283.03 to his account, $1,175 representing the face value of the note and $108.03 accrued interest.

On December 23 the bank closed. At the time of its closing, the credit shown by the deposit slip had not been entered on the books of the bank. Logan testified that about three weeks before the auction sale he talked with Kem about the Rathbun sheep which, at that time, had been abandoned by Rathbun and in which Kem and the bank were interested; that he told Kem at that time that the bank would repurchase the Rathbun note and mortgage, and it was then agreed that Kem would bring in the note and receive credit for it. Thereafter the letter of December 5 was written to Kem; Kem attended the auction sale. He also testified that on December 13, the day after the auction sale, Kem brought the Rathbun note to the bank; that the witness computed the interest on it and gave him the deposit slip for principal and interest. Kem already had a checking account in the bank; the note was thereupon surrendered to the bank. Kem did not object to this method of closing the transaction and did not demand cash for the note.

This evidence was amply sufficient to warrant the finding of the court to the effect that Kem was and is a general creditor of ▮ the bank. The evidence was in some respects conflicting; but in such a case, if the court's findings have support in the evidence, we will not disturb them. (*Fousek* v. *DeForest*, 90 Mont. 448, 4 Pac. (2d) 472; *Ferguson* v. *Standley*, 89 Mont. 489, 300 Pac. 245, 248; *Cellars* v. *Dwinnell*, 87 Mont. 73, 285 Pac. 181.)

Nor is it of any consequence that credit had not actually been ▮ extended on the books of the bank at the time it closed. A deposit is complete so as to establish the relationship of debtor and creditor between the bank and the depositor where, as here, money or negotiable instruments are delivered into the possession of the bank with the understanding that credit will be given therefor, even though there has been no actual entry of credit on the books of the bank. (*Bassett* v. *City Bank & Trust Co.*, 115 Conn. 393, 161 Atl. 852; *In re Ruskay*, (C. C. A.) 5 Fed. (2d) 143; *State ex rel. City of Las Vegas* v. *Sandoval*, 34 N. M. 50, 277 Pac. 31; *Cohen* v. *First Nat. Bank*, 22 Ariz. 394, 198 Pac. 122, 15 A. L. R. 701; *State* v. *American State Bank*, 108 Neb. 98, 187 N. W. 759; *Gaines* v. *First State Bank of Bellevue*, (Tex. Civ. App.) 28 S. W. (2d) 297; *First Nat. Bank of Cincinnati* v. *Burkhardt*, 100 U. S. 686, 25 L. Ed. 766; *State ex rel. Sorensen* v. *Citizens' State Bank*, 124 Neb. 562, 247 N. W. 345.)

Nor is the conclusion affected by the fact that Logan, who ▮ furnished most of the testimony in support of the court's finding, has been convicted of a felony in connection with his operations of the bank. The weight of his testimony was still a question for the court when, as here, the case was tried to the court without a jury.

When the bank closed, some of the purchasers of part of the ▮ property had not yet settled with the bank, and hence that part of the proceeds, amounting in all to $1,105, had not been mingled with the assets of the bank. In consequence, counsel for appellant contends that as to such proceeds they were held in trust by the bank for Kem. This argument over-

looks the arrangement testified to by Logan, whereby Kem became a general creditor of the bank by its repurchase of the Rathbun note. The fact that the proceeds of the auction sale had not been mingled with the assets of the bank is of no importance as to the rights of Kem, if the arrangement was as testified to by Logan.

There being substantial evidence in the record to support the conclusion of the trial court, the judgment must be, and is, affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE STEWART, being disqualified, takes no part in the foregoing opinion.